CHICAGO, ST. LOUIS AND NEW ORLEANS RAILROAD COMPANY *v.* GEO. D. ABELS.

60 1017
87 384

1. COMMON CARRIER.  *Special contract.  Exemption from common law liability.*
  A common carrier has the right by special contract to stipulate for exemption from the liability imposed upon him at common law, but he cannot thus secure exemption from the consequences of his own negligence or misconduct.

2. SAME.  *Special contract.  Burden of proof.*
  In an action by the owner for damages to property shipped the burden of proof is upon the common carrier to prove the existence of a special contract of shipment, if there be one, and to prove that the injury complained of resulted without his fault, from some cause excepted by the contract.

3. SAME.  *Care and diligence.*
  What is due care and diligence on the part of a common carrier is a question which depends upon the circumstances and the nature of the article shipped.

4. SAME.  *Special contract.  Action for damages.  Condition precedent.  Case in judgment.*
  A., the owner, shipped certain stock to Durant by the Chicago, St. Louis and New Orleans Railroad Company, upon a special contract.  On the passage a mule was injured.  It was taken off the cars at Durant in the presence of the

company's station agent who saw its injured condition. A. refused to receive the mule and it was allowed to run on the commons at Durant. He brought an action against the railroad company to recover the value of the mule. The special contract of shipment provided that as a condition precedent to a right of recovery for such injury the shipper should give notice in writing to the agent of the carrier of his claim for damages "before said stock is removed from the place of destination and before such stock is mingled with other stock." On the trial the court below refused to instruct the jury that the plaintiff could not recover because of his failure to give notice in writing to the agent of the defendant of his claim for damages. *Held*, that the instruction was properly refused, as there was no removal of the mule from the place of destination, and no mingling of it with other stock, in the sense of the above stipulation.

5. SAME. *Special contract. Stipulation for limited liability, when void.*
   A common carrier cannot avoid payment of full damages to property which he has undertaken to transport, by showing a special contract limiting in advance his liability to an amount less than the real loss sustained by the shipper.

APPEAL from the Circuit Court of Holmes County.

Hon. C. H. CAMPBELL, Judge.

G. D. Abels being the owner of nine head of horses and one mule, shipped the same from New Haven, Ky., to Durant, Miss., a station on the line of the Chicago, St. Louis & New Orleans Railroad Company under a special contract of shipment, containing, among others, the following stipulation: "Inconsideration that the said party of the first part (the R. R. Co.) will transport for the party of the second part (Abels), one car load of horses and mules (ten head more or less) from New Haven, Ky., to Durant Station, at the rate of $120 per car load and a free passage to the owner or his agent on the train with the stock, the same being a special rate, lower than the regular rate mentioned in said tariff, the said party of the second part thereby relieves said party of the first part from the liability of a common carrier in the transportation of said stock and agrees that such liability shall be only that of a private carrier for hire. And said party of the second part hereby accepts for such transportation the cars provided by said company and used for shipment of such stock and hereby assumes all risk of injury which the animals or any of them may receive in consequence of either or any of them being

wild, unruly, or weak, or maiming each other or themselves, or in consequence of heat or suffocation, or other ill effects of being crowded in the car, or of loss or damage from any cause or thing not resulting from the. negligence of the agents of the said party of the first 'part."

The mule was injured on the trip, and when the car load arrived at Durant Abels refused to receive the mule and it was turned loose upon the commons.   He brought the suit to recover the value of the mule, a verdict was returned in favor of the plaintiff, and from such judgment the Railroad Company appeal to this court.

*W. P. & J. B. Harris*, for the appellant.

That public policy which guards the shipper of goods, and which imposes upon common carriers liability, except for injury or loss by the act of God or the public enemy, however well founded, must yield to common sense and the securities of commerce.   It is obvious to the common mind that the transportation of live stock or animals in great numbers, or indeed in any quantity by rail, is peculiar and exceptional.   They are liable to sicken, to injure themselves and to be injured by each other, by the jolting and swaying of the cars, for this liability or susceptibility is admitted to be, and in practice is found to be, so constant and universal, that injuries not otherwise explained may always be safely set down to causes inherent in the character of the freight, and the mode of transportation.   We ask attention to the observations of Christiancy in *Mich. R. Co.* v. *McDonough*, 21 Mich. 165, on these peculiarities.   If the court should not adopt the conclusions of the Michigan court, that the obligation of a common carrier does no attach to the transportation of animals by rail (and the conclusion is that of the English courts), that case and those upon which it rests abundantly show that we have in such cases what we have in the shipment of fruit, inherent tendencies to damage, which damage, when found to have occurred, will be referred by a natural law always at work to produce it — to the tendency. So that when we find the car safe, and the road good, and no

fault in the management, and yet injury, the carrier has the *prima facie* case on the plainest principles of justice and good sense. In any event, it is clear that the transportation of animals must be governed by special contracts; for the sufficient reason that they cannot be carried on the basis of the law of common carriers. Here the contract reduces the case to a question of negligence. By the contract the parties agree that the liability of the carrier will be that of a private carrier for hire; that is to say, the liability must arise from the negligence of the carrier only, and that negligence, as in the case of a mere bailment, must be shown by the plaintiff. 21 Wis. 81; 44 Wis. 405. But above and beyond this, the proof here showed distinctly and circumstantially that the injury did not arise from defects in the car, the road, or the management, and was rationally attributable to that cause always at work, from the animals, coupled with the necessary hazard of the mode of transportation. The car was shown to be safe and adapted to the purpose and nine out of ten animals arrived safely and in good condition. On the state of the case as it stood before the jury, the defendant stood acquitted, and the court should have instructed that the plaintiff must show negligence. The *res ipsa loquitur* did not exist in the first place, because damage of one out of ten animals in one car by no means involved the idea that the negligence of the carrier caused the damage. Here the inference is the very reverse. The condition in the contract requiring notice was reasonable. The mule was turned upon the commons without custody of any sort and this was such a removal or mingling with other stock as was contemplated by the contract. Nothing could be more within its meaning than turning the mule out, not to be housed or penned, in a town. *Express Co.* v. *Hunnicutt*, 54 Miss. 566; Lawson on Car. 149; *Goggin* v. *Kansas R. Co.*, 12 Kan. 416; *Rice* v. *Kansas R. R. Co.*, 63 Mo. 3. We do not consider the ruling in the *Railroad Co.* v. *Moon*, 39 Miss. 822, as establishing a doctrine in conflict with the right to stipulate as to the value to be put on animals. Here, then, was a deliberate

contract signed by the shipper. A horse dealer is a fair match for any railroad company, "scheming corporation or trickster." Public policy is a good thing, but we can conceive of no policy so important to trade and commerce, to thrift, to business, as that which allows some men to take care of themselves, and make such contracts as they think for their interest. A paternal government is a curse, and a paternal judiciary may be said to be not less objectionable. Are we not, in this pursuit of corporations and carriers, allowing one idea to dominate too much. It may become hypochrondria. 98 Mass. 239; *Railroad Co.* v. *Henlein*, 52 Ala. 606; Hutchinson on Car. pp. 100, 101, sects. 248, 249; *Railroad Co.* v. *Henlein & Barr*, 56 Ala. 368. There seems no reason to doubt that an express contract fixing value must be respected. In *Harvey* v. *Railroad Co.* 6 Am. & Eng. R. R. Cas. 207 (Missouri), the court affirmed the general proposition that such contracts did not violate the rule that carriers may not exempt themselves from negligence. In the particular case it is true there were other reasons for the judgment, but the court plainly intended to support the Alabama case.

*J. P. Allen*, for the appellee.

Railroad companies cannot, in consonance with the great object had in view in their charters, surrender their character of public carriers, and, by contract with individual shippers, assume that of private carriers, and the company must be free from negligence. The duty of the railroad company is to carry and deliver safely. If the loss or injury can be ascribed to a failure to do what diligence and care would suggest was feasible to have been done, then the public carrier cannot shield himself behind an exemption in the bill of lading. 49 Miss. 725; 58 Miss. 911. The court properly construed the artfully contrived printed contract made with appellee, and the jury were properly charged, and returned a verdict in accordance with the law and the facts in this case. Appellant is liable for attorney's fee, both in this court and the court below, whether appellee is a citizen of this State or not; but

---

---

if the Act of 1882, p. 110, only allowed attorney's fee to citizens of the State, there is no evidence that G. D. Abels was not a citizen of Mississippi at the time he brought this suit, and the judgment is proper and just and legally entered against the corporation.

*Hooker & Wilson*, on the same side.

The instructions for the plaintiff are certainly correct. They announce the simple doctrine that defendant was a common carrier, and was responsible for the negligence or misconduct of their agents and employees, and that it was their duty to provide suitable cars for the safe transportation of the freight that they undertook to carry for the public. These are their common-law liabilities and duties as common carriers, and by no contract can they limit or abridge their duties and liabilities in this respect. *Vide.* A railroad company acting as a common carrier of animals is subject to all the duties and liabilities of a common carrier. 10 Ohio St. 65; 8 Kan. 623; 26 Vt. 247; 47 Iowa, 262; 71 N. Y. 180; 3. C. 61 (30 Am. Rep. 13). And cannot, by special contract, limit its common-law liability. 10 Ohio St. 65. Common carriers cannot, by contract, evade liability for their own negligence, nor limit it to gross negligence. 24 Minn. 506; 10 Ohio St. 65; 8 Kan. 623. A contract purporting to limit the liability of a common carrier must be reasonable. The provision of the contract that notice of damage must be given before removal of property, was unreasonable. The shipper might not know of damage received by his stock until after he had received them, but still, under the contract, he could not sue. Such stipulations are unreasonable. 81 N. C. 438; 22 Ind. 21; 44 Ala. 101; 2 Hilt. 19. As the court has decided that the allowance of attorney's fee is unconstitutional, we will enter a *remittitur* for that amount.

CAMPBELL, C. J., delivered the opinion of the court.

A common carrier may, by special contract, stipulate for exemption from the liability imposed by the common law, but

may not thus secure exemption from the consequences of negligence or misconduct.

The burden is on the carrier relying on a contract stipulating for a restricted liability to prove it, if it is not proved by the other party, and to show that the injury complained of resulted, without fault on the part of the carrier, from some cause excepted by the contract. The carrier in such case must show, at least *prima facie*, that the injury did not result from neglect. It would then devolve on the other party to produce evidence to fasten blame on the carrier for the injury. If it appeared that the injury was excepted by the contract, and that no want of care and diligence on the part of the carrier in the particular case contributed to the injury, the loss should fall on the shipper according to the stipulation of the contract.

The carrier must show a full performance of duty with respect to what was shipped, according to its nature, and when that showing is made, and that the injury was from an excepted cause in the contract, liability cannot be fixed on the carrier, except by proof of a want of due care and diligence. What is due care and diligence by the carrier must depend on circumstances, and the nature of the article shipped.

In case of injury to living animals, which may be caused by each other or by the inherent liability to sickness and death or self-inflicted injury in close confinement, if the carrier does all towards their safe carriage which should be done, and still injury results, no responsibility should be fastened on the carrier.

In this case the car was suitable, and the road-bed good, and the transportation speedy and safe, so far as respects the delivery at Durant of the car containing the mule and horses. There is no imputation on the capacity or vigilance of the employees on the train. There is evidence that the mule was found " down " in the car at Water Valley by the conductor who " got it up," and the testimony shows that, at each stop between that point and Durant, observation was made to see

if the mule was down again, and it was not discovered in that condition.

There is evidence that the mule was down about the time of the arrival of the train at Durant, and was trampled by the horses. There is nothing to show when the mule was prostrated nor from what cause. It may have been sick and unable to stand, or preferred a reclining posture, or it may have been overborne by the horses resenting the unequal association with an inferior animal in the close contact of the crowded car. Certainly, there was nothing surprising in the misfortune of the mule, and nothing calculated to suggest any dereliction of duty by the carrier with respect to it.

The court refused to instruct the jury that the plaintiff could not recover, because of his failure to give notice in writing to the agent of the carrier of his claim for damages, there being a stipulation in the contract of shipment that a condition precedent to the right to recover for any injury was notice in writing, "before said stock is removed from the place of destination   *   *   *   and before such stock is mingled with other stock." Whatever view may be taken of such a stipulation in other circumstances, it was proper in this case to refuse to make the right of the shipper to recover to depend on compliance with the requirement of notice of his claim, as specified in the contract. It does not appear that there was any removal of the mule from Durant, which was the "place of destination," or that there was any mingling with other stock, in the sense of the stipulation, and the station agent of the carrier at Durant was present when the mule hobbled out of the car at the place of delivery.

The court did right to refuse to instruct the jury that the limit of the plaintiff's right of recovery was one hundred dollars. The contract contains a stipulation that, "should damage occur,   *   *   *   the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not exceed, for a stallion or jack, $200; for a horse or mule, $100; cattle, $30 each; other animals $15

each." The evidence showed the mule would have been worth
$140, or more, in Durant, if sound and in good condition.
There was no evidence of its value at the place of shipment,
but it is a just inference that it was worth more than $100
there.

If in fault, the carrier should make compensation by pay-
ing the damage done, and should not be allowed to stipulate
in advance for a diminished liability below the real loss sus-
tained by the fault which creates liability.    To allow that
would defeat the politic rule against stipulating for exemp-
tion from the consequences of negligence or misconduct.

We find no fault with the action of the court on the instruc-
tions, but because of the allowance of an attorney's fee, the
judgment will be reversed, and, under our view of the evi-
dence, we decline to permit final judgment here on a *remittitur*
of the attorney's fee, and remand the case for a new trial.