# Louisville & Nashville R. R. Co. *v.* Sherrod.

*Action against Common Carrier for loss of Goods.*

1. *Special stipulation limiting liability of carrier, as to value of goods.* A common carrier may, by special contract, limit his liability for loss of goods to an amount agreed on as the value, in consideration of a reduced rate of freight; provided no extortion or coercion is practiced or threatened, and no undue advantage taken of the shipper; but such special contract does not protect the carrier against liability for fraud, nor for intentional, wanton, or reckless negligence.

APPEAL from the Circuit Court of Montgomery.
Tried before Hon. JOHN P. HUBBARD.

THOS. G. JONES, and J. M. FALKNER, for appellant, cited Hutchinson on Carriers, § 239; *Ala. Gt. So. R. R. v. Little,* 71 Ala. 614; *Steele v. Townsend,* 37 Ala. 247; *Hart v. Penn. R. R.,* 112 U. S. 337; *Henlein v. Railroad,* 52 Ala.

[Louisville & Nashville R. R. Co. v. Sherrod.]

615; s. c., 56 Ala. 372; *L. & N. R. R. Co. v. Oden*, 80 Ala. 44; 25 Md. 341; *Gardner v. Hearlt*, 3 Denio, 232; *Graves v. L. S. & M. S. R. R. Co.* 131 Mass. 35; *Lockwood's Case*, 17 Wall. 357; *Lewis v. Gt. West, R. R.*, L. J. Q. B. 131; L. R. 3; Q. B. 45.

WILLIAMSON & HOLTZCLAW, *contra*, cited *R. R. Co. v. Lockwood*, 17 Wall. 357; *M. & O. R. R. Co. v. Hopkins*, 41 Ala. 486; *Steele v. Townsend*, 37 Ala. 247; *S. & N. R. R. Co. v. Henlein*, 52 Ala. 615; s. c., 56 Ala. 368; *Ib. v. Wilson*, 78 Ala. 587; *Ala. Gt. So. R. R. Co. v. Little;* 71 Ala. 611; *Hooper v. Wells*, 27 Cal. 11; *Magetti v. Hadom R. R.* 3 E. D. Smith, 98.

CLOPTON, J.—The suit is brought by appellee to recover damages for the failure of appellant to deliver furniture and other goods, shipped from Birmingham to Cherokee, Alabama. The goods were destroyed by a collision between two of defendant's trains on a bridge, which was "unsafe for the passage of trains in case of collision thereon, and was being repaired." The bill of lading contains a stipulation, limiting the value of the goods, and the extent of the defendant's liability, in case of total loss. The agreed statement of facts shows, that without such agreement as to the value, a much greater rate of freight was charged on such shipments than was charged in this case, which rate was reasonable; and that the limitation as to value was in consideration of a reduced rate of freight, and was inserted in the bill of lading as a part of the contract of shipment. The plaintiff contends that a carrier can not stipulate, so as to limit the common law measure of his liability for loss caused by his own negligence. The contestation is founded on the general proposition, that a common carrier can not relieve himself, by special contract, from liability for loss or injury resulting from his negligent conduct.

Whether a carrier may limit the extent of his liability by an agreed valuation has heretofore been considered in several cases by this court. In *S. & N. R. R. Co. v. Henlein*, 52 Ala. 606, where the action was on a contract for the transportation of live stock, such stipulation was, under the circumstances of the case, sustained as just and reasonable. It was said: "If the measure of the liability thus fixed appeared to be greatly disproportionate to the real value of the animal, and the amount of freight received, we should

not hesitate to declare it unjust and unreasonable. But as the case is presented, it seems to have been intended to adjust the measure of liability to the reduced rate of freight charged, and to protect the carrier from exaggerated or fanciful valuations. We can not, therefore, pronounce it unjust and unreasonable, and it is the measure of the appellant's liability." The principle of the decision is, that the carrier and shipper may lawfully contract as to valuation in case of loss, when the contract is supported by an adequate consideration, and there is no imposition, coercion or unfair dealing. This ruling was adhered to in a subsequent case between the same parties, 56 Ala. 368.

In *Ala. Gr. So. R. R. Co. v. Little*, 71 Ala. 611, expressions are found in the opinion to the effect, that the law will not tolerate, that a carrier shall stipulate, by special contract, for exemption from liability for the value of the goods carried, when the loss or injury occurs from the want of ordinary care, skill and diligence. The main question in the case related to the construction and effect of a special term in the bill of lading limiting the extent of the company's liability. The contract was construed as not exempting the company from liability for the value of the goods, if lost by the want of ordinary care, skill and diligence. The rule established by the preceding cases was recognized; which is, that the limitation of the carrier's common law liability may extend "to the amount of damages for which he will be liable in the event of loss or injury, when the purpose appears to secure a just and reasonable proportion between the amount for which he is liable, and the freight which he is to receive." The first of the cases above referred to is cited as sustaining this rule. It was not intended to overrule the former cases. The decision is in terms confined to the case before the court, which was a non-delivery without excuse or explanation; and the effect of the decision is, that in such case, the special term of the contract does not exempt the carrier from liability for the value of the goods. And in the subsequent case of *L. & N. R. R. Co. v. Oden*, 80 Ala. 38, a stipulation, limiting the liability to the value of the cotton at the time and place of shipment, was sustained as just and reasonable, where the cotton was destroyed by fire, though the loss may have been the result of negligence.

Limitations as to value do not come under the operation of the rule, that a carrier can not, by special contract, exempt himself from liability for the consequences of his own negli-

[Louisville & Nashville R. R. Co. v. Sherrod.]

gences, and ordinarily are not calculated to induce negligence. To the amount of the agreed valuation the carrier is responsible for loss occasioned by his neglect, or by any of the risks or accidents for which he is answerable. No public good will be subserved by denying to the parties the right to make such contracts. The shipper and the carrier may lawfully contract as to the valuation of the articles to be transported. Such special contract is in the nature of an agreement to liquidate the damages, proportionately to the compensation received for the carriage, and the responsibility of safely carrying and delivering. In many cases, the carrier does not know, and has not the means to ascertain the real value of articles offered for shipment. An agreement as to the valuation may be a reasonable and proper mode of adjusting the measure of liability to the amount of freight paid by the shipper, who thereby receives the benefit of a reduced rate. When the value has been thus fairly agreed on, the carrier cannot recover a greater rate, and the shipper should not be allowed to take benefit of the reduced rate, if there is no loss, and to repudiate the contract, if there is a loss.

This question has under gone much consideration and discussion by the courts of this country, and the decisions are not in accord; but the tendency of the late decisions is, to sustain such contracts, when made in good faith, and both parties have freedom of contracting. In a case similar to this in many of its features, Morton, C. J. says "We cannot see that any sound public policy requires that such contracts should be held invalid, or that a person, who in such contract fixes a value upon the goods which he entrusts to a carrier, should not be bound to his valuation." And Blatchford, J. in a late case, holding such limitations just and reasonable, says: "The distinct ground of our decision in the case at bar, is, that when a contract of the kind signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.—*Graves v. Lake Shore & Mich. So. R. R. Co.*, 137 Mass. 33; *Hart v. Penn. R. R. Co.*, 112 U. S. 331. Many other authorities might·be cited, but it is unnecessary.

[Mem. & Char. R. R. Co. and East T , V. & G. R. R. Co. v. Hembree.]

There is, however, a qualification of the rule. A common carrier exercises a public employment, and is bound to receive and carry, at reasonable rates, any goods offered, and the means of transportation are greatly monopolized. Under these circumstances, a carrier will not be permitted to take advantage of his position to coerce the shipper to agree to a limited value by a threatened charge of a high and unreasonable rate, if such agreement is not made. There must be no imposition, coercion, or undue advantage. Neither can the carrier stipulate for immunity from liabilty for fraud or for intentional or reckless negligence. Such special contracts may be avoided by wilful or wanton negligence in disregard of the rights of the shipper.

The agreed statement of facts shows, that in this case, the higher rate which the defendant charged in the absence of an agreed valuation, was reasonable, and that the agreed valuation was in consideration of a reduced rate. The shipper had the option to pay the high rate, and hold the carrier responsible for the full value of the goods, or obtain a reduced rate based on the agreed valuation. Having freedom to contract, he choose the latter, and received the benefit, and will not be permitted, under such circumstances, in the absence of imposition, or unfair advantage, to repudiate the value to which he agreed. " It would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing, and of freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of a loss."—*Hart v. Penn. R. R. Co.*, *supra.*

Reversed and remanded.