RAILWAY COMPANY *v.* WYNN.

(*Nashville.*    January 2, 1890.)

1. RAILWAY COMPANIES.   *Responsibilities as carriers of live stock.*

The duties and responsibilities of railway companies, as shippers of live animals, are precisely those of a common carrier with respect to other property committed to its care for transportation, except that they are not insurers against losses and injuries resulting from the inherent nature, propensities, or habits of the animals themselves.

Cases cited and approved: 10 Lea, 304; 6 Heis., 271; 85 Tenn., 69; 86 Tenn., 198; 11 Lea, 116; 112 U. S., 331; 36 Minn., 539 (S. C., 1 Am. St. Rep., 692); 71 Wis., 372 (S. C., 5 Am. St. Rep., 226); 31 Minn., 85; 30 Kan., 645; 60 Miss., 1017; 52 Ala., 368; 85 Ala., 47; 92 Mo., 343 (S. C., 1 Am. St. Rep., 721).

2. COMMON CARRIER.   *Invalidity of contracts exempting from liability for negligence.*

Common carrier, whether of live animals or other property, cannot validly stipulate for exemption to any extent, either in whole or in part, from liability for losses caused by its negligence.

Cases cited and approved: 16 Lea, 225; 2 Lee, 288; 85 Tenn., 529; 86 Tenn., 397; 87 Tenn., 559; 31 Minn., 85; 30 Kan., 645; 25 Md., 334; 60 Miss., 1017; 28 Ohio St., 144; 55 Wis., 319; 52 Ala., 606; 71 Ala., 611; 103 Ind., 121; 35 Am. and Eng. R. Cases, 666; 69 Ill., 62; 97 Ill., 525 (S. C., 34 Am. Rep., 197); 17 Wall., 357–384; 112 U. S., 338; 74 Mo., 538; 92 Mo., 343 (S. C., 1 Am. St. Rep., 721).

Cited and distinguished: 112 U. S., 331; 137 Mass., 33; 74 Mo., 539; 25 Md., 329; 84 Ala., 178.

Cited and disapproved: 98 Mass., 239; 52 Ala., 615; 56 N. Y., 168; 50 Ark., 551 (S. C., Am. and Eng. R. Cases, 635).

3. SAME.   *Burden of proof upon carrier to show that loss was not caused by negligence.*

Burden of proof rests upon carrier of live animals to show that loss resulted, not from its negligence, but from some other cause, for which it was not responsible.

Railway Company *v.* Wynn.

Cases cited and approved: 7 Yer., 340; 8 Hum., 498; 9 Bax., 188; 2
Lea, 296; 86 Tenn., 393; 71 Ala., 611; 63 Penn. St., 14; 36 Minn.,
539 (S. C., 1 Am. St. R., 692); 60 Miss.; 1017; 28 Ohio St., 144;
55 Wis., 319.

4. SAME.   *Case in judgment.*

The shipper of a fine mare, worth $800, accepted of the carrier a bill of
lading containing a statement that its liability for loss of a "horse or
mule" should not, in any case, exceed $100.   There was no agreed
valuation of the mare adopted as basis for freight charges.   The
mare was in good condition when delivered to carrier, but died be-
fore reaching destination.

*Held:* That stipulation limiting carrier's liability to $100 is invalid as
to a loss caused by its negligence; and that burden of proof was
upon the carrier to show that the mare died from other cause than
its negligence.

5. PRACTICE.   *As to omissions in charge.*

Mere omissions in the Court's charge is not reversible error in a civil
case where no requests for the proper instructions were made in the
Court below.

Cases cited: 9 Heis., 27; 12 Heis., 375; 12 Lea, 157; *Ib.*, 762; 7
Lea, 201.

6. SAME.   *As to construction of written instruments offered in evidence.*

The interpretation of written contracts or instruments is a matter for
the Court, and should not be submitted to the jury; and, if improp-
erly left to the jury, this Court will reverse, unless it is made clear
upon the record that the jury gave the contract or instrument its
proper construction.

Cases cited: 11 Hum., 245; 12 Heis., 451; 13 Lea, 250, 280.

---

FROM SUMNER.

---

Appeal in error from Circuit Court of Sumner
County.   A. H. MUNFORD, J.

21—4 P

C. R. HEAD and J. J. TURNER for Railway Company.

S. F. WILSON and G. W. BODDIE for Wynn.

CALDWELL, J.   Miss Louise Wynn intrusted her thorough-bred mare and colt to the Louisville and Nashville Railroad Company for transportation from Gallatin, Tenn., to Lexington, Ky.   The mare died before reaching her destination, and this suit was brought to recover her value from the railroad company.

Verdict and judgment were obtained for $800 principal, as the value of the mare, and $167.35 interest thereon.

The railroad company has appealed in error.

The shipment was made under what is called a "live - stock contract," which contained numerous specific stipulations, one of them being as follows: "And it is further agreed that should damage occur for which said party of the first part [the railroad company] may be liable, the value at the place and date of shipment shall govern the settlement, in which the amount claimed shall not ex- ceed: For a stallion or jack, $200; for a horse or mule, $100; cattle, $30 each; other animals, $15 each."

The trial Judge, following the first part of this provision and ignoring the other, instructed the jury, in substance, that, if the plaintiff be entitled to recover at all, the measure of damages would

be the value of the mare at the time and place of shipment.

It is contended by counsel for the company that it can in no event be liable for more than $100, that being the *maximum* sum mentioned in the contract as recoverable for a horse; and that, therefore, the recovery is excessive, even if it be shown or conceded that the death of the mare was caused by the negligence of the company.

If the limitation as to amount in the stipulation quoted be valid, the contention is correct; if invalid, then the contention cannot be sustained. Therefore, the validity or invalidity of that limitation is the question for our consideration on this branch of the case.

In this contract of affreightment the defendant company was a common carrier. Though questioned in argument at the bar, it is now well settled, at least in this country, that railroads are common carriers of live stock, with the same duties and responsibilities as existed at common law with respect to the carriage of goods, except that they are not to be held as insurers against losses and injuries resulting from the inherent nature, propensities, or habits of the animals themselves. *Hart v. Pennsylvania Railroad Company*, 112 U. S., 331; *Lindsley v. C. M. & St. P. R. R. Co.*, 36 Minn., 539 (S. C., 1 Am. St. R., 692); *Ayres v. Railroad Company*, 71 Wis., 372 (S. C., 5 Am. St. R., 226); 31 Minn., 85; 30 Kan., 645; 60 Miss., 1017; 52 Ala., 606; 56 Ala., 368; 85

Ala., 47; 92 Mo., 343 (S. C., 1 Am. St. R., 721);
*Baker* v. *Railroad Company*, 10 Lea, 304; *Railroad
Company* v. *Jackson*, 6 Heis., 271; *Railroad Com-
pany* v. *Hale*, 1 Pickle, 69; *Smitha* v. *Railroad
Company*, 2 Pickle, 198; *Railroad Company* v.
*Mason*, 11 Lea, 116.

In some of these cases the question as to
whether or not railroad companies are to be re-
garded as common carriers of live stock, is elabo-
rately considered, with the conclusion we have
announced; and in others they are recognized and
treated as possessing that character without discus-
sion. The number of cases so holding in this and
other States of the Union could be greatly multi-
plied if their citation were deemed necessary.

We only add the weight of the opinion of a
few eminent text-writers. Says Mr. Hutchinson,
after a review of many of the adjudged English
cases: "These cases have been considered as es-
tablishing in the English law the principle—what-
ever doubts might have been previously cast upon
the question by the opinions of learned Judges—
that the carriers of live animals incur the respon-
sibilities of common carriers as to such freight;
but that at the same time, where an injury has
happened to them, it is competent for the carrier
to show that it occurred through the 'proper vice'
of the animal, and not from any negligence on
his part. And in this country, with great una-
nimity the duty and liability of the common car-
rier as to such freight have been defined with ex-

actly the same limitations and exceptions." Hutch-
inson on Carriers, Sec. 221.

" In nearly all the States the rule is now well
established that the liability of carriers of live
stock is the common law liability of common car-
riers of other property, subject only to the quali-
fication that the carrier may be excused from
liability where the loss is attributable to the in-
trinsic qualities or nature of the animals, provided
he is himself free from negligence, or is exempted
by a valid contract protecting him. This rule
seems to have been affirmed in the following
States: *Alabama, California, Georgia, Illinois, In-
diana, Iowa, Kansas, Louisiana, Maine, Massachu-
setts, Minnesota, Mississippi, Missouri, Nebraska, New
Hampshire, New York, North Carolina, Ohio, Penn-
sylvania, South Carolina, Vermont, Virginia, West
Virginia, Wisconsin.*" Am. and Eng. Ency. of
Law, pp. 6 and 7.

It is to be observed that Tennessee is omitted
from this enumeration, but the decisions which we
have cited from this Court recognize, if they do
not declare, the rule as stated.

Following the proposition that railroads are
common carriers of live stock, and accountable as
such, our next observation is that no rule of law
is more firmly and generally established than that
which permits common carriers to limit their lia-
bility by special contract; *provided, always, that
such limitation shall not operate to exempt them from
the consequences of their own negligence or that of*

*their servants. Railroad Company* v. *Lockwood,* 17 Wall., 357–384; 112 U. S., 338; *Dillard* v. *Railroad Company,* 2 Lea, 288; *Coward* v. *Railroad Company,* 16 Lea, 225; *Marr* v. *Tel. Company,* 1 Pickle, 529; *Trans. Company* v. *Bloch,* 2 Pickle, 397; *Pepper* v. *Tel. Company,* 3 Pickle, 559; 52 Ala., 606; 71 Ala., 611; 74 Mo., 538; 92 Mo., 343 (S. C., 1 Am. St. R., 721); 69 Ill., 6$\bar{2}$; 25 Md., 334; 103 Ind., 121; 31 Minn., 85; Lawson on Con. of Cor., Secs. 29 to 67 inclusive; *Ib.,* Sec. 132; Hutchinson on Cor., Secs. 248 and 263; 3 Wood's Railway Law, 1578; Schl. on Bail. and Cor. (2d Ed.), Sec. 456.

The author of American and English Encyclopedia of Law says: "By the clear weight of authority in England, Canada, the United States, and almost without exception in the States of the Union, the rule has been adopted that the common carrier can make no contract the effect of which will be to exempt him from liability for negligence." 2 Am. and Eng. Ency. of Law, 822.

Is the limitation in the contract before us within the prohibition of this eminently just and generally accepted principle?

Manifestly the stipulation does not contemplate *total* exemption from liability; it only provides for *partial* or *limited* exemption. Upon that distinction the nice and important question arises, Can a stipulation of the *latter* character stand before the law when one of the *former* kind cannot? Or, to state the same question differently, and so as to

apply it more directly to the facts of this case, the rule of law being established, as we have seen it is, that the defendant company could not lawfully have contracted with the plaintiff that it would in no event be liable *for any part* of the value of the mare if lost or destroyed, can the limitation of its liability to $100 be upheld in the Courts, if it should appear that her death resulted from the negligence of the company, and that she was in fact worth eight times that amount, as the jury found her to be? We unhesitatingly answer, *No.* The carrier cannot by contract excuse itself from liability for the *whole* nor *any part* of a loss brought about by its negligence. To our minds it is perfectly clear that the two kinds of stipulation—that providing for *total,* and that providing for *partial* exemption from liability for the consequences of the carrier's negligence—stand upon the same ground and must be tested by the same principles. If one can be enforced the other can; if either be invalid, both must be held to be so, the same considerations of public policy operating in each case.

With great deference for those who may differ with us, we think it entirely illogical and unreasonable to say that the carrier *may not* absolve itself from liability for the *whole* value of property lost or destroyed through its negligence, but that it *may* absolve itself from responsibility for one-half, three-fourths, seven-eighths, nine-tenths, or ninety-hundredths of the loss so occasioned. With

great unanimity the authorities say it cannot do the *former*. If allowed to do the *latter* it may thereby substantially evade and nullify the law which says it shall not do the *former*, and in that way do indirectly what it is forbidden to do directly. We hold that it can do neither. The requirement of the law has ever been, and is now, that the common carrier shall be diligent and careful in the transportation of its freight, and public policy forbids that it shall throw off that obligation, whether by stipulation for exemption *in whole* or *in part* from the consequences of its negligent acts. This view is sustained by sound reason, and also by the weight of authority. *Coward* v. *Railroad Company*, 16 Lea, 225; *Moulton* v. *St. P., M. and M. Railway Company*, 31 Minn., 85; *Railroad Company* v. *Simpson*, 30 Kan., 645; *Railroad Company* v. *Ables*, 60 Miss., 1017; *U. S. Express Company* v. *Blackman*, 28 Ohio St., 144; *Black* v. *G. T. Company*, 55 Wis., 319; *A. G. S. Railroad Company* v. *Little*, 71 Ala., 611. See also *Rosenfield* v. *Railway Company*, 103 Ind., 121; *M. P. Railroad Company* v. *Fagan*, 35 Am. and Eng. Railroad Cases, 666; 97 Ill., 525 (S. C., 34 Am. R., 197).

Though cases are sometimes cited from several States as adopting a view different from that expressed above in this opinion, we have been able to find cases from only four States, and none from Supreme Court of the United States, in which the precise question has arisen and been

adjudged differently.    We cite one case from each
State: *Squires* v. *N. Y. C. Railroad Company*, 98
Mass., 239; *S. and N. Railroad Company* v. *Hen-
lien*, 52 Ala., 615; *Maguire* y. *Dinsmore*, 56 N. Y.,
168; *Railroad Company* v. *Weakly*, 50 Ark., 551
(S. C., 35 Am. and Eng. R. Cases, 635).

The later case of *Railroad Company* v. *Little*, 71
Ala., 611, we regard as an authority for the holding
in this opinion, and, therefore, as in conflict with
the earlier case of *S. and N. Railroad Company*
v. *Henlien*, 52 Ala., 615, wherein an adverse view
is expressed.    In the Little case, on page 615, the
learned Chief Justice, Bickell, says: "The carrier
cannot stipulate for an absolute, unqualified ex-
emption from *all* liability, nor can he stipulate
that he will answer, in any and all events, only
for a sum *less than the value of the goods*, because,
in consideration of reduced rates of freight, the
shipper may assent to it."

The New York Courts have been consistent in
holding that common carriers may contract for
*partial* exemption, for they also hold that they
may contract for *total* exemption, even from the
consequences of their own negligence.    So Lord
Ellenborough was likewise consistent, when, in
speaking of the right of common carriers under
the English law to contract for entire exemption
from responsibility for loss by fire, he said: "Since
they may limit it to a particular sum, we think
they may exclude it altogether, and that they
may say we have nothing to do with fire.    They

may make their own terms. I am sorry the law is so; it leads to very great negligence." *Maving* v. *Todd,* 1 Stark., 72; Lawson on Con. of Cor., Sec. 131.

The cases of *Hart* v. *Pennsylvania Railroad Company,* 112 U. S., 331; *Groves* v. *Railroad Company,* 137 Mass., 33; *Harvey* v. *Railroad Company,* 74 Mo., 539; *Brehme* v. *Dinsmore,* 25 Md., 329; *Railroad Company* v. *Sherrod,* 84 Ala., 178, are not at all in conflict with our opinion in this case. They were decided upon an entirely dissimilar state of facts, and from a wholly different point of view; that is to say, it appeared to the Court, in each and every one of those cases, that there was *an agreed valuation* stated in the contract as the basis of the carrier's charges and responsibility; and the Courts very properly held that in such cases the shipper was estopped to claim a greater sum than the agreed valuation.

Though evident from the reasoning in the body of the opinion in the Hart case, which may now be called the leading case in America, the Court is careful to say, in conclusion, that the decision is based alone upon the ground above stated. 112 U. S., 343.

Such is *not* this case. Here there is no pretense of an *agreed valuation* of the mare, either in the written contract or the oral proof. On the contrary, an inspection of the contract shows that there was no agreed valuation stated therein, and the oral proof shows that absolutely nothing was

said about the value of the mare at the time of shipment.

The trial Judge charged the jury that, if the mare was shown to have been in good health and condition when started upon her journey, it was incumbent on the railroad company to show that her death was not caused by its negligence; and he at the same time refused to charge, as requested in behalf of the company, that the burden was upon the plaintiff to establish negligence. This action is assigned as error.

At common law a common carrier could relieve itself from liability for the loss of property intrusted to it for transportation, only by showing that the loss was caused by the act of God or the public enemy, or that it resulted from the inherent nature of the thing itself. In other words, to escape liability the burden was upon the carrier to bring itself within one of the exceptions recognized by law.

The rule is the same now, except that in this day of special contracts it has been relaxed so that the carrier may exonerate itself from responsibility by either showing that the case falls within one of the exceptions of the common law or within one of the stipulations of the special contract. 2 Greenleaf Evi., Sec. 219; 52 Ala., 606; 71 Ala., 611; 7 Yer., 340; 8 Hum., 498; 9 Bax., 188; 2 Lea, 296; 2 Pickle, 393; 63 Pa. St., 14; 36 Minn., 539 (S. C., 1 Am. St. R., 692); 60 Miss., 1017; 28 Ohio St., 144; 55 Wis., 319;

Lawson on Con. of Cor., Secs. 245, 246, 247, and 248; Hutchinson on Cor., Sec. 764; Scheuler on Bail. and Cor., Sec. 439.

The instruction given was correct.

But his Honor should have gone further in this case, and told the jury that the mere fact that the mare was found to be dead on reaching her destination did not absolutely fix the liability of the carrier, but simply devolved upon it the necessity of showing that the death did not result from its fault or negligence, which it might do by proof that its cars were in good and safe condition, that the transportation was made with all proper care, and that there were no bruises or signs of injury upon the dead body, or indications that death followed from other than natural causes.

The omission, however, to so further instruct the jury is not reversible error, there having been no proper and accurate request for such instruction. 9 Heis., 27; *Ib.*, 762; 12 Heis., 375; 12 Lea, 157; *Ib.*, 46; 7 Lea, 201.

We notice still another question raised in the assignment of errors.

By the plain terms of the written contract between the parties, the carrier bound itself to furnish a free pass for an attendant of the stock, and the shipper at the same time assumed the reciprocal duty of sending a proper attendant to care for the stock. In several distinct and important propositions found in the charge, the Court submitted the ascertainment and construction of

those terms to the jury, instead of construing the contract himself and telling them its meaning. This, it is contended, was error; and so it was, manifestly.

It was unquestionably the province and duty of the trial Judge to construe the contract, or so much of it as was pertinent to the issues raised, and to give a correct interpretation of it to the jury for their guidance and assistance in making up their verdict. The rule of law and practice requiring the Court to construe written instruments is so reasonable and so well established that it would seem altogether unnecessary to cite authorities to sustain it, yet we refer to some of our own cases: *Bedford* v. *Flowers*, 11 Hum., 245; *Mills* v. *Faris*, 12 Heis., 457; *Kendrick* v. *Cisco*, 13 Lea, 250; *Railroad* v. *McKenna*, *Ib.*, 280.

It has been suggested that such an error would be immaterial, and would not afford ground for reversal if it should appear that the jury had, nevertheless, construed the writing correctly. This is true, and in this view we have carefully examined the case. After doing so we are unable to determine what meaning the jury gave the contract. There is no special verdict, nor any other fact or circumstance by which that question can be determined. The result reached throws no satisfactory light upon it, and the only course left open to this Court is to award a new trial and let the error be corrected in the Court below.

Reverse and remand.