### CALDERON v. ATLAS STEAMSHIP CO., Limited.

(Circuit Court of Appeals, Second Circuit. July 30, 1895.)

SHIPPING—LOSS OF GOODS—CONTRACT LIMITING LIABILITY.

A bill of lading under which certain bales and crates of duck uniforms were shipped contained a clause providing that the carrier should not be liable for gold, silver, and other enumerated articles, "or for goods of any description which are above the value of $100 per package, unless bills of lading are signed therefor with the value therein expressed, and a special agreement is made." *Held*, that this should be construed, not as excluding any liability for packages exceeding $100 in value, but as excluding liability for the excess over $100, and that the stipulation was a reasonable and valid limitation upon the carrier's liability. 64 Fed. 874, affirmed. Wallace, Circuit Judge, dissenting, was of opinion that the provision was intended to exclude all liability, and that, even accepting the court's construction, the clause was void as applied to a loss by negligence, as in direct contravention of the act of February 13, 1893, known as the "Harter Act." 27 Stat. 445.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by Climace Calderon against the Atlas Steamship Company, Limited, to recover damages for nondelivery of cargo. The district court rendered a decree in favor of libelant for $2,900, with interest and costs. 64 Fed. 874. Libelant appeals.

North, Ward & Wagstaff, for appellant.

Wheeler & Cortis, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. Libelant shipped 26 bales and 3 crates of duck uniforms for transportation by the steamship Ailsa from New York to Savanilla, thence by rail to Barranguilla, there to be delivered to the collector of customs, for which respondent issued its bill of lading. The goods were not landed at Savanilla, but were brought back to New York, and reshipped on the Alvo of the same line, which was lost at sea on the voyage, with all on board. The actual value of the goods lost was $5,413.18. Inasmuch as the respondent has not appealed, the only question before this court is whether the district court erred in limiting the amount of libelant's recovery to $100 per package, under the bill of lading.

The bill contained on its face the following provision:

"And. finally, in accepting this bill of lading, the shipper, owner, and consignee of the goods and the holder of the bill of lading agree to be bound by all of its stipulations, exceptions, and conditions, as printed on the back thereof, whether written or printed, as fully as if they were all signed by such shipper, owner, consignee, or holder."

On the back of the bill of lading, among numerous other clauses, was printed the following:

"(1) It is also mutually agreed that the carrier shall not be liable for gold, silver, bullion, specie, documents, jewelry, pictures, embroideries, works of art, silks, furs, china, porcelain, watches, clocks, or for goods of any description which are above the value of $100 per package, unless bills of lading are signed therefor with the value therein expressed, and a special agreement is made."

Stipulations in bills of lading limiting the amount of the carrier's liability on each package carried to some stated sum, unless the value of the package is declared, and a special agreement made, have been repeatedly held valid, and such reasonable regulations for the conduct of the carrier's business so as to prevent imposition upon him, and to establish proper charges adequate to the extent of the risks to be undertaken, may be communicated to the shipper by notice printed upon the carrier's receipt. Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151; Railroad Co. v. Fraloff, 100 U. S. 24; Potter v. The Majestic, 9 C. C. A. 161, 60 Fed. 624. It is contended that the clause above quoted is not such as these authorities sanction,—namely, a reasonable regulation to protect the carrier from excessive loss where the hazardous character of the goods or the fact that they are valuable is not disclosed to him,—but is rather a clause undertaking to relieve the carrier entirely from his common-law liability, and therefore not enforceable. The language used, "shall not be liable for gold, * * * or for goods of any description which are above the value of $100 per package, unless," etc., if literally construed, would no doubt import that the carrier shall be liable for nothing in the package if its value is over $100. But a more reasonable interpretation is that adopted by the district judge, namely, that the goods which are above $100 in the package may be excluded from consideration, and only those which amount to $100 be regarded. Being a clause in a written form of contract prepared by the carrier, and susceptible of two constructions, it is to be construed in favor of the other party, and, as thus construed, it applies only to such of the goods in each package as

are in excess of the stipulated value, and is therefore within the authorities above cited. The decree of the district court is affirmed, with costs of this court to the appellee.

WALLACE, Circuit Judge (dissenting). I dissent from the judgment of the court in this case. The 26 bales of goods in controversy were shipped by the libelant at New York for transportation to and delivery at Savanilla. The goods were not delivered by the steamship, but were forgotten and overlooked by those in charge of her while she was being unloaded at Savanilla. After she had left the port, the goods were discovered, and were taken back by the steamship to New York, and thence reshipped to their original destination on board another vessel, which foundered at sea, and the goods were lost. The corporation owning the steamship attempts to escape liability for the loss of the goods by a defense founded upon a condition in the bill of lading which reads as follows:

"In case any part of the goods cannot be found for delivery during the steamer's stay at the port of destination, they are to be forwarded by first opportunity, when found, at the company's expense; the steamer not to be held liable for any claim for delay or otherwise."

The bill of lading contained also another condition, which reads as follows:

"This agreement is made with reference to, and subject to, the provisions of the U. S. Carriers' Act, passed February 13, 1893."

By that act, commonly known as the "Harter Act" (27 Stat. 445), it is provided, among other things, that it shall not be lawful for the owner of any vessel transporting merchandise from or between ports of the United States and foreign ports to insert in any bill of lading any clause or agreement whereby the vessel shall be relieved "from liability for loss or damage arising from negligence, fault or failure in proper loading, stowage, custody, care or proper delivery" of any merchandise committed to its charge, and that any words of such import inserted in the bill of lading "shall be null and void and of no effect." The court below correctly decided that the condition relied upon was in direct contravention of the statute which the parties by express agreement had incorporated into the bill of lading, and therefore ineffectual to absolve the steamship company from liability for the failure, through negligence, to make proper delivery of the goods. But the court also decided that the steamship company was entitled to a partial exemption from liability because of another condition in the bill of lading, which reads as follows:

"It is also mutually agreed that the carrier shall not be liable for gold, silver, bullion, specie, documents, jewelry, pictures, embroideries, works of art, silks, furs, china, porcelain, watches, clocks, or for goods of any description which are above the value of $100 per package, unless bills of lading are signed therefor with the value therein expressed, and a special agreement is made."

In the opinion it was conceded that the condition, if read literally, so as to exempt the carrier wholly for goods in packages exceeding in value $100, would be too unreasonable to be sustained;

but the court concluded that it should be construed as intended to exclude liability beyond $100 for goods in any one package, and, as so construed, was a reasonable one, and therefore valid.

This court in the prevailing opinion has adopted the conclusions of the court below. The construction thus given to the condition seems to me to ignore its explicit terms, expressed in the plainest possible language. I think the condition was intended to exempt the carrier wholly, in case of loss or damage to any goods of the several kinds mentioned in it, including those the value of which would exceed $100 per package. To uphold such a condition would permit a carrier, receiving goods which he may know are worth more than $100 per package, to absolve himself from all responsibility in respect to them, and thus divest himself altogether of the obligations which are inseparable from his occupation.

But if the condition is capable of being read so as to exempt the carrier from liability beyond the amount of $100 for each package, it does not include a liability for a negligent loss of the goods. In construing, in a bill of lading, the exceptions to the carrier's liability, the rule obtains, both in the English courts and our own, that where the words leave the intention in doubt they are to be construed against him, and their meaning is not to be extended to give him a protection for which he has not bargained in clear terms; and it is therefore to be presumed, unless the contrary is stated, that he is to continue liable for negligent acts and faults committed by himself or his servants. General words exempting him from liability under particular circumstances do not protect him from the consequences of his own negligence. If it had been the purpose of the condition, explicitly expressed, to lessen the liability of the steamship company from the consequences of a loss arising from its own negligence or that of its agents, the condition would have been prohibited, and therefore void, by the act of congress. In order to give it any effect, it must be read as though it were not intended to apply to such a loss. The condition is not one whereby the shipper and carrier agree in advance, by the terms of the contract, upon the value of the goods, and limit the liability of the carrier to a sum not to exceed the valuation; and the cases of Hart v. Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, Muser v. Holland, 17 Blatchf. 412, 1 Fed. 382, Graves v. Railroad Co., 137 Mass. 33, and several others which might be cited, where the contract was of that description, are not in point.

In Hart v. Railroad Co., the court say:

"The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract."

And in concluding the opinion the court used the following language:

"The distinct ground of our decision in the case at bar is that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation,

even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations."

There is no injustice in restricting a shipper's claim for damages to the value he places on his property for transportation. Where the contract and the rate of freight are based upon an assumed fictitious value of the goods carried, the parties are bound to that value in case of loss. McCance v. Railroad Co., 34 Law J. Exch. 39. Where there is an agreed valuation stated in the contract, that is assumed as the basis of the carrier's compensation and responsibility. Such a valuation would necessarily, in the absence of fraud, conclude both the shipper and the carrier upon any inquiry as to the amount of damages arising from a loss, and the contract would therefore extend to any kind of a liability,— the liability of the carrier as an insurer as well as for a negligent loss. In the present case there was no statement of the value of the goods. The bill of lading was delivered after the steamship company had received the goods, and, as delivered, it was silent in respect to their value. Construing it as intended to exempt the steamship company from liability beyond the value of $100 per package, the contract between the parties was merely that this sum should be deemed the limit of the company's liability. Such a contract is not the equivalent of one valuing the goods, and the exemption, therefore, does not reach a loss by the carrier's negligence. This was distinctly adjudged in Magnin v. Dinsmore, 56 N. Y. 168, and Westcott v. Fargo, 61 N. Y. 542, and in both of these cases it was held that a condition to exempt the carrier from liability for loss beyond a specified sum, in the absence of a statement of value by the shipper, would not exempt him from liability for loss by his own negligence. On the contrary, in Belger v. Dinsmore, 51 N. Y. 166, where the condition provided that the goods should be valued at a specified sum, in the absence of a statement in the contract of a different value, the same court held the carrier's liability to be limited to that sum, in the absence of the statement, although the loss was by his own negligence.

The authorities are elaborately considered and reviewed in Railroad Co. v. Wynn, 88 Tenn. 320, 14 S. W. 311, and the conclusion reached that a condition limiting the liability of a carrier, in case of loss, to a specified sum, in the absence of a statement of a different value, is not a valuation of the goods, and does not relieve the carrier from liability for the whole value in case of a negligent loss.

The steamship company could have exacted from the libelant a statement of the value of his goods, if it had seen fit to do so, or it could have required him to agree that they should be regarded as of a certain value in the absence of a statement upon his part of a different value; but it did neither, and only stipulated with him that it should not be liable beyond a specified sum in case

of loss. The law presumes that this agreement does not refer to a loss by the carrier's negligence.

For these reasons I think there should be a reversal of the decree below, and a decree for the libelant for the whole value of his goods.