UNITED STATES LACE CURTAIN MILLS v. OCEANIC STEAM NAV-
IGATION CO., Limited.

(District Court, S. D. New York.    May 3, 1906.)

SHIPPING—DAMAGE TO CARGO—VALIDITY OF LIMITATION OF LIABILITY IN BILL
OF LADING.

A condition in bills of lading issued by a steamship company, limiting
its liability in case of loss to a specified sum per package unless the
value of the goods shall be expressed therein, is not an agreed valuation
of the goods, and is invalid to relieve the company from liability for
the full loss in case of their loss or injury through negligence, but a
limitation to the invoice or declared value is reasonable and enforce-
able.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§
663–665, 708; vol. 44, Cent. Dig. Shipping, § 495.]

In Admiralty.    Suit for damage to cargo.

Black & Kneeland, for libellant.
Robinson, Biddle & Ward, for respondent.

ADAMS, District Judge.    This libel was filed by the United States
Lace Curtain Mills to recover the damages sustained through certain
machinery shipped on the Oceanic Steam Navigation Company's
steamship Georgic at Liverpool on the 30th of December, 1904, being
injured during the voyage.    The shipment consisted of 12 pieces and
11 cases of lace curtain machinery, 2 of which were cases 38 or 40
feet long.    The action relates to one of these cases, which the libellant
contends was broken on board the vessel and the contents, long bars
used in curtain machines, so injured that it was necessary to send
them back to England for repairs.

The respondent claims that the machinery was delivered in New
York in good order and condition, and further denies the libellant's
allegation that the damage, if any, was not caused by any peril law-
fully excepted in the bill of lading but was due to fault of neglect of
the respondent in the loading, stowage, custody or care of said cargo.
It then sets up a claim contained in the bill of lading that it should not
be liable for any sum exceeding £20 per package unless the value
should be expressed in the bill of lading and freight paid thereon.    A
further defence is pleaded that, in any event, the bill of lading con-
tained a condition that the respondent should not be liable for more
than the invoice or declared value of the goods whichever should be
less.

The testimony shows that the case in question, No. 355, was ex-
amined early in January, 1905, on the respondent's wharf a few days
after arrival, by the treasurer of the libellant, who found it in a badly
broken condition, with a considerable bend in it, so that it was out of
shape.    After calling the respondent's attention to it, the case was sent
by the libellant to Kingston, New York, where its manufacturing plant
was located, and the contents removed.    It was found that all the bars
were bent, so that it was impossible to use the machinery and it was
returned to the manufacturers, there being no facilities for repairing
in this country.    It was subsequently returned here after a bill of
$598.57 had been incurred.

There is a contention on the respondent's part that there is no credible proof that damage existed when the case was delivered to the libellant and urges the probability of it having been injured after delivery, as it was subjected then to the strain of transportation by lighter and by rail. The libellant's contention that the package was in bad order when delivered to it at New York is, I think, reasonably well sustained by the treasurer's testimony and the necessary conclusion is that the contents of the case received injury while in respondent's possession. In this respect, the libellant is entitled to have its claim sustained.

Another question is, what damages should be allowed. The bill of lading provides:

"1. It is also mutually agreed that the Company shall not be liable for any sum exceeding £20 per package for goods of whatever description, nor for any amount in respect of Gold, Silver, Bullion, Specie, Jewellery, and articles used for Jewellery, Precious Stones or Metals. Documents, Paintings, Pictures, Engravings, Statuary, or any other valuable goods of whatever description, unless the value of such shall be herein expressed and freight as may be agreed paid thereon."

The libellant contends:

"(1st) That the clause of the bill of lading quoted amounts at most to an agreement for partial exemption from liability, and is not a contract agreeing upon the value of the goods, and liquidating damages for loss thereof.

"(2nd) That a limitation to £20 for a case or package of this description is entirely unreasonable."

The respondent contends that the amount should not be over £20 and after referring to clause 1 of the bill of lading, quoted supra, urges in brief as follows:

"No value was expressed in the bill of lading, and therefore the parties have agreed that the Company shall not be liable for more than £20 for any package. A clause differently worded, but construed as if worded in the same way, was enforced by Brown, J., and by the Circuit Court of Appeals in Calderon v. Atlas S. S. Co. (D. C.) 64 Fed. 874, and 69 Fed. 574, 16 C. C. A. 332. It is true that these decisions were reversed by the Supreme Court in 170 U. S. 272, 278, but only because the clause was literally construed as relieving the carrier of any liability whatever, and therefore against public policy."

The law in this connection is well expressed in Amer. & Eng. Enc. of Law, v. 5, p. 333, as follows:

"The criterion by which the validity of such stipulations is to be determined, where the loss is one caused by the carrier's negligence, lies in determining whether the value placed upon the article as the limit of liability is an agreed value, fixed by consent of both parties and constituting the basis upon which the freight charges are calculated, or whether it is an arbitrary value, printed in all bills of lading or shipping contracts, and concerning the fairness of which the shipper has not been questioned. In the former case the authorities are practically agreed that such a stipulation is valid, but in the latter case it is of no force when the loss results from negligence."

The Hart Case—Hart v. Pennsylvania Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717—is the leading case on this branch of the law. There it was held that where a contract of carriage, signed

by the shipper, is fairly made with a carrier, agreeing on a valuation of the property carried, with a rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, the contract will be upheld.  In discussing the matter, the court said (112 U. S. 340, 343, 5 Sup. Ct. 156, 28 L. Ed. 717) :

"The agreement as to value, in this case, stands as if the carrier had asked the value of the horses, and had been told by the plaintiff the sum inserted in the contract.    *    *    *

"The distinct ground of our decision in the case at bar is, that where a contract of the kind, signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and for protecting himself against extravagant and fanciful valuations.  Squire v. New York Central R. R. Co., 98 Mass. 239, 245, 93 Am. Dec. 162, and cases there cited."

The case under consideration does not fall within the terms of the Hart Case.  There was here no value expressed in the bill of lading, nor a signed agreement with respect to it.  The Calderon Case relied upon was reversed by the Supreme Court and, in any event, is not an authority in point, because it lacked the essential features of a lawful limitation.  The limiting clause there was (69 Fed. 575, 16 C. C. A. 632) :

"(1) It is also mutually agreed that the carrier shall not be liable for gold, silver, bullion, specie, documents, jewelry, pictures, embroideries, works of art, silks, furs, china, porcelain, watches, clocks, or for goods of any description which are above the value of $100 per package, unless bills of lading are signed therefor with the value therein expressed, and a special agreement is made."

Judge Wallace in his dissenting opinion, 69 Fed. 577–579, 16 C. C. A. 332, says:

"General words exempting him [the carrier] from liability under particular circumstances do not protect him from the consequences of his own negligence.  If it had been the purpose of the condition, explicitly expressed, to lessen the liability of the steamship company from the consequences of a loss arising from its own negligence or that of its agents, the condition would have been prohibited, and therefore void, by the act of congress.  In order to give it any effect, it must be read as though it were not intended to apply to such a loss.  The condition is not one whereby the shipper and carrier agree in advance, by the terms of the contract, upon the value of the goods, and limit the liability of the carrier to a sum not to exceed the valuation ;    *    *    *.

"There is no injustice in restricting a shipper's claim for damages to the value he places on his property for transportation.  Where the contract and the rate of freight are based upon an assumed fictitious value of the goods carried, the parties are bound to that value in case of loss.  McCance v. Railroad Co., 34 Law J. Exch. 39.  Where there is an agreed valuation stated in the contract, that is assumed as the basis of the carrier's compensation and responsibility.  Such a valuation would necessarily, in the absence of fraud, conclude both the shipper and the carrier upon any enquiry as to the amount of damages arising from a loss, and the contract would therefore extend to any kind of a liability,—the liability of the carrier as an insurer as well as for a negligent loss.  In the present case there was no statement of the value of the goods.  The bill of lading was delivered

after the steamship company had received the goods, and, as delivered, it was silent in respect to their value. Construing it as intended to exempt the steamship company from liability beyond the value of $100 per package, the contract between the parties was merely that this sum should be deemed the limit of the company's liability. Such a contract is not the equivalent of one valuing the goods, and the exemption, therefore, does not reach a loss by the carrier's negligence. This was distinctly adjudged in Magnin v. Dinsmore, 56 N. Y. 168, and Westcott v. Fargo, 61 N. Y. 542, 19 Am. Rep. 300, and in both of these cases it was held that a condition to exempt the carrier from liability for loss beyond a specified sum, in the absence of a statement of value by the shipper, would not exempt him from liability for loss by his own negligence. On the contrary, in Belger v. Dinsmore, 51 N. Y. 166, 10 Am. Rep. 575, where the condition provided that the goods should be valued at a specified sum, in the absence of a statement in the contract of a different value, the same court held the carrier's liability to be limited to that sum, in the absence of the statement, although the loss was by his own negligence.

"The authorities are elaborately considered and reviewed in Railway Co. v. Wynn, 88 Tenn. 320, 14 S. W. 311, and the conclusion reached that a condition limiting the liability of a carrier, in case of loss, to a specified sum, in the absence of a statement of a different value, is not a valuation of the goods, and does not relieve the carrier from liability for the whole value in case of a negligent loss.

"The steamship company could have exacted from the libelant a statement of the value of his goods, if it had seen fit to do so, or it could have required him to agree that they should be regarded as of a certain value in the absence of a statement upon his part of a different value; but it did neither, and only stipulated with him that it should not be liable beyond a specified sum in case of loss. The law presumes that this agreement does not refer to a loss by the carrier's negligence."

The Supreme Court, in reversing the Circuit Court of Appeals, said (Calderon v. Atlas S. S. Co., 170 U. S. 281, 282, 18 Sup. Ct. 588, 592, 42 L. Ed. 1033):

"In this case the contract is one prepared by the respondent itself for the general purposes of its business. With every opportunity for a choice of language, it used a form of expression which clearly indicated a desire to exempt itself altogether from liability for goods exceeding $100 in value per package, and it has no right to complain if the courts hold it to have intended what it so plainly expressed. * * *

"Under this interpretation there is a clear attempt on the part of the carrier to exonerate itself from all responsibility for goods exceeding the value of $100 per package. Such exemption is not only prohibited by the Harter Act, but is held to be invalid in a series of cases in this court, culminating in Chicago, Milwaukee etc. Railway v. Solan, 169 U. S. 133, 135, 18 Sup. Ct. 289, 42 L. Ed. 688, wherein it was said that 'any contract by which a common carrier of goods or passengers undertakes to exempt himself from all responsibility for loss or damage arising from the negligence of himself or servants, is void as against public policy, as attempting to put off the essential duties resting upon every public carrier by virtue of his employment, and as tending to defeat the fundamental principle upon which the law of common carriers was established.' The difficulty is not removed by the fact that the carrier may render itself liable for these goods, if 'bills of lading are signed therefor, with the value therein expressed and a special agreement is made.' This would enable the carrier to do, as was done in this case—give a bill of lading in which no value was expressed, under which it would not be liable at all for the safe transportation and proper delivery of the property. This would be in direct contravention of the Harter Act. Indeed, we understand it to be practically conceded that under the construction we have given to this clause of the contract the exemption would be unreasonable and invalid."

In the case of Railway Company v. Wynn, 88 Tenn. 320, at page 330, 14 S. W. 311, at page 313, referred to by Judge Wallace, it was said:

"The cases of Hart v. Pennsylvania Railroad Company, 112 U. S. 331; 5 Sup. Ct. 151, 28 L. Ed. 717; Graves v Railroad Company, 137 Mass. 33, 50 Am. Rep. 282; Harvey v. Railroad Company, 74 Mo. 539; Brehme v. Dinsmore, 25 Md. 329; Railroad Company v. Sherrod, 84 Ala. 178, 4 South. 29, are not at all in conflict with our opinion in this case. They were decided upon an entirely dissimilar state of facts, and from a wholly different point of view; that is to say, it appeared to the court, in each and every one of those cases, that there was an agreed valuation stated in the contract as the basis of the carrier's charges and responsibility; and the courts very properly held that in such cases the shipper was estopped to claim a greater sum than the agreed valuation."

There can be no doubt of the liability of the respondent here because of negligence in failing to deliver the shipment in the good order and condition in which it was received and it does not seem that the recovery can be limited to $100, but the limitation to the invoice or declared value of the goods is admitted to be reasonable and enforceable.

There will be a decree for the libellant, with an order of reference to ascertain the amount of damages it has sustained, not exceeding the invoice or declared value.