### THE CALEDONIA.

GOLDSMITH *v.* HENDERSON *et al.*

*(District Court, D. Massachusetts. August 15, 1888.)*

1. SHIPPING—UNSEAWORTHY VESSEL—WEAK SHAFT.
   Where a steamer's propeller shaft, which had been long in use, broke in fair weather, when the ship was under ordinary full speed, and no wreckage lay about or rock that could have been struck, and the shaft showed no flaw on subsequent examination, the court found that the shaft was weak before the vessel left port, and *held*, that this constituted such a defect as to render the ship unseaworthy at the commencement of her voyage, and her owner liable for damages arising out of such condition.

2. SAME—DAMAGES—DELAY—LOSS OF WEIGHT.
   When a shipper of cattle furnished sufficient provisions to last during an ordinary voyage, but, owing to the unseaworthiness of the ship, the voyage was unduly prolonged, *held*, that the ship was liable for the shrinkage in the weight of the cattle occasioned by lack of provisions.

3. SAME—FALL IN MARKET PRICE.
   In the usual course of the business of shipping cattle abroad, they are sold immediately on arrival, which fact was known to the ship agent when the contract for transportation was signed. Owing to the unseaworthiness of a ship. the voyage was prolonged 20 days, during which the market price of the cattle fell. *Held*, that the ship was liable for the shipper's loss caused by the fall in the market price.

In Admiralty. Libel by shipper of cattle for damages arising out of the breaking of the shaft of the steamship Caledonia. Decree for libelant. Affirmed on appeal, 43 Fed. Rep. 681.

*Henry M. Rogers* and *Warren K. Blodgett*, for libelant.

*William G. Russell* and *George Putnam*, for claimants.

NELSON, District Judge. The Caledonia sailed from Boston, June 15, 1885, and on June 24, when nine days out, her propeller shaft broke in the stern tube, and the machinery was disabled. The rest of the

voyage was performed under sail, and she arrived at Deptford, July 20th, being 20 days beyond her usual passage. The cattle were put on short allowance, and were landed in an emaciated condition. It appeared that the ship experienced no rough weather on her passage previous to the accident, and that the breaking of the shaft occurred in fine weather; that, at the time of the accident, she was under ordinary full speed; that there was no wreckage floating about to indicate that the ship struck any submerged bulk, and no reef or rock could have been struck. It also appeared that the propeller shaft had been 14 years in use. On her previous trip out, the ship had encountered severe gales.. Upon examination of the breakage in England, no flaw was discovered. Upon these facts I find that the shaft must have become weakened from long use, and broke from that cause, and that this weakness existed at the time the ship left Boston, and constituted such a defect as to render the ship unseaworthy at the commencement of her voyage; and that the exception in the bill of lading of perils of the sea, and damage by delays and defects of machinery, was no limitation on the warranty of the seaworthiness of the ship, at the commencement of the voyage. I find that there was no fault on the part of the ship in not accepting assistance from other vessels spoken after the accident. Upon the question of damages, it appeared by the agreement of the parties, in lieu of a reference to an assessor to assess the damages, that the whole amount of damages suffered by the libelant arose from two sources of loss,—shrinkage in weight from the protracted voyage, and fall in the market value of the cattle during the delay in arrival; and that these two causes together made the loss $7,850, and that one half thereof, $3,925, was to be attributed to each cause.

The steamship company claimed that the shrinkage in weight was caused by the failure of the libelant to provide sufficient provisions for the cattle during the voyage. Upon this point I find that the libelant provided sufficient provisions for a voyage of the usual length, and that was all which, by the usage of the business, he was bound to provide, and that the shrinkage in weight was owing to the giving out of the provisions in consequence of the delay in arrival, for which the steamship company is responsible.

The steamship company also claimed that, as a matter of law, it should not be held responsible for the fall in market value. But as it appeared in evidence that the cattle were not to be sold until their arrival at Deptford, and were to be sold immediately upon their arrival, and that this was the usual course of the business of shipping live cattle by steamship line from Boston to Deptford for the London market, and that this was known to the agents of the steamship line at the time the contract between the parties was executed and the bill of lading was signed, I am of opinion the steamship company is responsible for the loss by the fall in the market, as well as by shrinkage in weight, and is liable for the whole amount of the libelant's damage from both causes. Decree for the libelant for $7,850, and interest from the filing of the libel, and for costs.