GREAVES v. NEAL et al.

(Circuit Court, D. Massachusetts. August 22, 1893.)

No. 3,453.

1. FEDERAL COURTS—JURISDICTION — ASSIGNEE FOR BENEFIT OF CREDITORS — EXTRATERRITORIAL RIGHTS.

An assignee under the Minnesota statutes regulating voluntary assignments for creditors may maintain suit in a federal court in Massachusetts to recover the value of property acquired by the defendant in Minnesota in violation of Laws Minn. 1881, c. 148, § 4, declaring void preferences made within 90 days of making an assignment. Huntington v. Attrill, 13 Sup. Ct. Rep. 224, 146 U. S. 657, followed.

2. SAME—COMITY.

The enforcement of such statute rights by federal courts is not ordinarily restricted by the local policy of the state where suit is brought, as the question is one of general and international law.

3. SAME—RIGHT OF ASSIGNEE TO SUE.

The right of action having arisen primarily, and vested in the assignee by force of the Minnesota statute, and not by force of the assignment, his right to maintain the suit is not affected by the fact that in a certain sense he sues in a representative capacity.

4. PLEADING—INCONSISTENT ALLEGATIONS—ASSIGNMENT FOR BENEFIT OF CREDITORS.

Laws Minn. 1881, c. 148, § 1, as amended by Laws 1889, c. 30, authorizes a debtor to assign "for the equal benefit of all his creditors, in proportion to their respective valid claims, who shall file releases," and section 4, as amended by the same act, declares void preferential conveyances and payments made within 90 days of making an assignment as provided in section 1. Held, that a declaration by an assignee to recover the value of property acquired by the defendant in violation of section 4, which set forth that the "assignment was for the equal benefit of all the assignor's creditors who should file releases," and which had annexed and made a part thereof the instrument of assignment; which stated that it was for the benefit of all creditors without any preference, contained inconsistent allegations, which neutralized each other, and failed to show the right of the assignee to maintain the suit.

5. SAME—AIDER.

The inconsistent pleading was not aided by a general allegation in the declaration that the assignment was executed under and in accordance with the laws of Minnesota.

6. SAME—RIGHT OF ASSIGNEE TO SUE—CONDITION PRECEDENT.

It was a condition precedent to the right of the assignee to sue that the assignment should have been made in the precise terms of the act of 1881, which terms are limited to assignments for the benefit of creditors who file releases.

At Law. Suit by Frank W. Greaves, assignee of James T. Harrison, against William H. Neal and others, to recover the value of property alleged to have been acquired by defendants by an unlawful preference. Defendants demur to the declaration. Sustained.

Warren & Brandeis and Ezra R. Thayer, for plaintiff.

J. F. Wiggin and B. M. Fernald, for defendants.

PUTNAM, Circuit Judge. This case came up originally on a motion to dismiss, which the court declined to hear in that form on account of the difficulty and importance of the questions involved. By

consent of the court the same was converted into a demurrer to the first, second, and third counts.

One question relates to the extraterritorial force of rights of action given by statute, and this in its general aspect is settled favorably to the plaintiff by the supreme court in the line of cases ending with Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. Rep. 224. The Massachusetts decisions have felt the force of the line of reasoning of the supreme court, although they have not fully yielded to it, as will be seen by Higgins v. Railroad Co., 155 Mass. 176, 29 N. E. Rep. 534. However, this court has no occasion to investigate the conclusions of the courts of Massachusetts, because Huntington v. Attrill, and the cases to which it refers, have determined that the main proposition involved is one of general and international law. Singularly, the same transaction came before the privy council in Huntington v. Attrill, [1893] App. Cas. 150, in which the same result was reached as by the supreme court, and upon the same general line of reasoning. In cases of this character the state tribunals may regard the local policy, and on account of it may, under some circumstances, refuse to take jurisdiction. In the federal courts, however, the rules laid down by the supreme court seem to leave no room for mere questions of comity, except so far as they may be involved in the underlying principles of jurisprudence, which prevent the enforcement within any jurisdiction of claims contra bonos mores, or claims which violate a well-settled and deep-seated policy concerning something beyond mere mala prohibita. The propositions touching the local policy of the state of Massachusetts presented in the case at bar do not go so deep, and cannot be considered under the broad rules of Huntington v. Attrill.

Neither is the case affected by the fact that the plaintiff sues in a certain sense in a representative capacity. While there is nothing in the decision of the supreme court in Huntington v. Attrill which modifies the settled rule that a statutory or judicial officer, like an administrator or executor or an assignee in insolvency, cannot ordinarily be recognized in a foreign jurisdiction with reference to interests which vest in him merely by succession, yet the alleged right of action in the present case arose primarily in the plaintiff himself, and vested in him, not by force of the assignment from the insolvent, but under the statute. Indeed, the subject-matter is one as to which the insolvent never had any right of action, and never could have any; and therefore this suit is clearly distinguishable on this point from the class of cases on which the defense relies. The transaction was, as a matter of fact, complete in the state of Minnesota, where, according to the declaration, the defendants were personally present, and received delivery of what is now sought to be recovered. If, when the goods were delivered, the violation of the law of Minnesota had been complete also as a matter of law, and was no longer inchoate, the fact that defendants departed from the state with the advantages of the preference which they had obtained would be of no importance in this proceeding. Neither would the peculiar form of action, which it is claimed by the de-

fendants is brought to recover not damages, but property, be of any consequence. Vested rights cannot be made to depend ordinarily upon the mere forms of remedy, which vary according to the local practice of the tribunals in which the litigation is pending. It is plain the statute intended to give the plaintiff the right to recover the property specifically, or its value; and when he seeks the latter, it is of no importance whether the statute looks strictly to an action for damages for a tort or to one in which the value or proceeds are demanded specifically as such. All such matters relate merely to form, and not to substance.

The defendants claim that the statute right was not complete under the laws of Minnesota when the preference was received, nor until the assignee was appointed and had elected to avoid the transaction. On the other hand, there is ground for claiming from the letter of the statute that the transaction was void at the outset; that the authority given the assignee to proceed by suit, if an assignment was made within the specified 90 days, only indicated the party to act, and the limit of time, and that meanwhile the right existed although the person who should maintain the action was not designated. It can easily be shown that there is no legal impossibility in this proposition. But if the position of the defendants is correct, and if everything remains inchoate until an assignee is appointed, and if, meanwhile, the party who receives the preference withdraws from the state of Minnesota with the benefits thereof, it may be a difficult question whether or not the right of action ever vested. Of course, the rule of the supreme court in Huntington v. Attrill, ubi supra, is not without limitations. There is a class of statute rights which, although apparently absolute, yet are in fact qualified, as is the case in several, if not all, of the New England states, with judgments of the first instance against trustees or garnishees. So, also, there are judgments which concern the status of individuals, as to which the court ordering them reserves within its own breast the right to modify them, among which are those touching the relations of husband and wife before or after divorce, and of infants with or without guardians. So, also, there are like judgments in the course of administration of property, as those touching proceedings by executors or administrators. So, also, there are certain rights where certain local forms are in the nature of conditions precedent, so that extraterritorial proceedings are impracticable, as is the fact with reference to ordinary statute proceedings touching bastard children and their maintenance. And there may also be other cases of a peculiar character, where for various reasons extraterritorial enforcement of the right given is impracticable. It is, however, not necessary to determine now whether the claim of the plaintiff in this case takes color from any of these suggestions, because the demurrer must be sustained for another reason; and, if it hereafter becomes necessary during the further progress of this cause, the court may receive more light on this branch of the case than it has yet been able to obtain.

The declaration sets out various statutes of Minnesota on which

the plaintiff relies. It begins with the act of 1878, which is not important in this connection. It then follows with the act of 1881, (chapter 148, § 1,) which provides that a debtor whose property is attached or levied upon, or against whom a garnishment is made, may "make an assignment * * * for the equal benefit of all his creditors, in proportion to their respective valid claims, who shall file releases." Then, further, is set out section 4 of the last-named act, by which preferential conveyances and payments "within four months of making an assignment, as provided in section 1 of this act," are made void. Plainly, by the letter of the statutes to this point, no assignment is effective for the purposes of section 4 unless it is made according to section 1. The whole closes with the act of 1889, which amends section 1 of the act of 1881, already referred to, so as to include any debtor "who shall have become insolvent." This last act expressly repeats the direction that the assignment shall be made for the equal benefit of all creditors who file releases of their demands; and it further amends the act of 1881 by changing the limit of time from 4 months to 90 days.

The counsel on each side have cited statutes of Minnesota not set out in the declaration, and some decisions of the courts of that state to which it does not refer. Perhaps this is ordinarily permissible with reference to the laws of states other than that within which a suit is pending in a circuit court, according to the rule stated in Fourth Nat. Bank of New York v. Francklyn, 120 U. S. 747, 751, 7 Sup. Ct. Rep. 757. Whether or not this rule would apply as against an express setting out in the declaration of the terms of such laws the court need not now determine, noting only that very likely enough of the common-law rule that if a statute is unnecessarily set out and misrecited in a material part the declaration is ill in substance remains to reach a case like this at bar. Gould, Pl. (4th Ed.) c. 3, § 171.

The court thinks, however, that in no event do any of these extrinsic matters referred to aid the plaintiff's declaration. The Minnesota Code of 1891, referred to by counsel on each side, clearly introduces no new element of law. In a case cited by the plaintiff —Mackellar v. Pillsbury, 48 Minn. 396, 51 N. W. Rep. 222—it was held, and was a matter in point, that under the laws of Minnesota a preference is not unlawful, except as prohibited by the act of 1881, already referred to. This decision was made February 10, 1892, and therefore meets the point taken by the plaintiff that the statutes of 1889 and 1891, extending to all insolvents the right to make assignments of the form and effect contemplated by the act of 1881, superseded the common law of Minnesota as to voluntary assignments. Independently of this decision, there is no force in this proposition, as there was no repugnancy between those statutes and the law as it previously existed; and they only granted a privilege to the insolvent debtor, without taking away any rights. Neither the case of Mackellar v. Pillsbury nor that of In re Bird, 39 Minn. 520, 40 N. W. Rep. 827, decides any other point here under consideration; and In re Bird expressly reserves them all, including

the question whether an assignment which does not provide for a release can be effective under the act of 1881. In the absence of any decision of the supreme court of Minnesota to the contrary, this court feels bound to follow the plain language of the statute, and sees some reasons why its purpose follows its letter. There is a just necessity for annulling preferences in favor of creditors who cannot avail themselves of an assignment without releasing their demands, which does not arise in favor of those who may share in the debtor's property under an assignment or otherwise, and hold their claims good for any unpaid percentage. The statutes of Minnesota having twice reiterated,—once in 1881 and once in 1889, —and each time in express terms, the requirement of a release of all demands in an assignment which is to be effectual to make preferences void, it appears to this court that for the judiciary to strike out this expression would be to legislate, and not to interpret.

The declaration refers to the assignment, and annexes it in such a way as to make it a part of the pleadings. While the former alleges in terms that the insolvent person assigned "for the equal benefit of all his creditors who should file releases," the assignment is expressed to be "for the benefit of all his creditors without any preference." This discrepancy is unexplained, and so makes a clear repugnancy in pleading in a material matter. This, of course, must be taken to the detriment of the pleader, with the result that the inconsistent allegations neutralize each other, or the one which is for the advantage of the defendants overrides the other. The general phraseology found at one place in the declaration, to the effect that the assignment was executed under and in accordance with the laws of the state of Minnesota, cannot aid the pleader, for reasons which are so clear that they need not be stated. As this court must hold that the statutes of Minnesota, whether as pleaded by the plaintiff or as explained by the extrinsic matters cited by counsel, render it a condition precedent to the right of an assignee to proceed for a preference that the assignment should have been made in the precise terms of the act of 1881, and that these terms are limited to assignments for the benefit of creditors who file releases, the demurrer must be sustained as the pleadings now stand. As the case must, however, go to trial on the fourth count, and as the questions involved are difficult and important, the court is disposed to permit the plaintiff to amend the declaration with reference to the counts demurred to, if he thinks he can do so successfully.

The court notes that it does not find in these counts any allegation in terms that the assignor was in fact insolvent at the time of the alleged preferences. It has considered the questions argued by both parties without reference to the form of demurrer, either at common law or under the Massachusetts practice acts.

Demurrer sustained; first, second, and third counts adjudged insufficient; judgment on the same for the defendants, with costs on the demurrer, unless plaintiff amends, and pays costs on or before the 18th day of September next.