### THE WELLS CITY.

#### MORRIS BEEF CO., Limited. v. THE WELLS CITY.

(Circuit Court of Appeals, Second Circuit. May 29, 1894.)

#### No. 103.

SHIPPING—CARRIAGE OF GOODS—LIABILITY FOR DELAY.

A clause in a bill of lading. giving the ship liberty "to tow and assist vessels in all situations," authorizes her, if in the ordinary course of the voyage she falls in with another vessel in distress, to go to her assistance and tow her to such place of safety as, under the particular circumstances of the case, is most reasonably accessible.

Appeal from the District Court of the United States for the Southern District of New York.

This was a libel by the Morris Beef Company, Limited, against the steamship Wells City, George John Savage, claimant, for damage to cargo. The district court dismissed the libel (57 Fed. 317). Libelant appealed.

MacFarland & Parkin (W. W. MacFarland, of counsel), for appellant.

Convers & Kirlin (J. Parker Kirlin, of counsel), for appellee.

Before WALLACE, LACOMBE, and SHIPMAN; Circuit Judges.

WALLACE, Circuit Judge. The libelant appeals from a decree dismissing a libel filed to recover damages for the decay and de-

terioration of a lot of beef shipped in good order at New York upon the steamship in a refrigerator, under a bill of lading for transportation to and delivery at Bristol, England.   57 Fed. 317.   Upon the voyage the steamship fell in with a vessel disabled and in distress, and took her in tow, and, in performing the salvage service, deviated from the voyage, and was detained thereby about four days beyond the ordinary voyage period.   The deviation was only such in distance and duration as was necessary to enable the steamship to take the vessel to a place of safety.   In consequence of the delay, the condition and value of the beef was materially impaired.   The bill of lading, after reciting the receipt, in apparent good order and condition, of the merchandise, continues as follows:

"To be delivered from the ship's deck in the like good order and condition at the aforesaid port of Bristol (subject to certain enumerated exceptions), and with liberty, during the voyage, to call at any port or ports to receive fuel, to load or discharge cargo, or for any other purpose whatever; to sail with or without pilots; to tow and assist vessels in all situations."

If the deviation was, under the circumstances, justified by the provision in the bill of lading in respect to liberty to tow and assist vessels in all situations, the libelant has no just cause of complaint.

It is urged for the appellant that the clause in question is not intended to authorize a deviation to earn salvage at the expense of the cargo; that to construe the clause so as to permit this would be subversive of the object of the contract; and that the only rational construction is that it exempts the carrier from becoming an insurer against excepted risks.   In construing such clauses, they are to be read in the light of the general purposes of the contract, and reconciled, so far as may be, with all of its expressed and implied conditions.   They are not to be permitted to operate to the extent of their literal scope when this would be inconsistent with the substantial objects of the contract.   One of the fundamental conditions of the contract by bill of lading is the obligation of the shipowner to be diligent in carrying the goods on the agreed voyage, and to carry them directly, without any unnecessary deviation; and a construction of the clause which would permit him to abandon the voyage, and go in search of a salvage service at his option, and merely for his own profit, would be inadmissible, as subversive of that obligation, and giving the shipowner a power obviously beyond any which the shipper could have contemplated.   "Liberty to do something outside the voyage must be construed with reference to that, and as intended to be consistent with it."   Carv. Carr. by Sea, § 286.   When a vessel has deviated from her proper course, the shipowner is not only liable for the delay, but he becomes absolutely responsible for any loss or damage to the goods which may have occurred during the deviation, and which can be attributed to it.   He is not protected by the exception of perils in the contract, and becomes practically an insurer against the excepted risks.   The clause giving the privilege to deviate would undoubtedly protect him against such a liability.   Effect, therefore, can be given to it without im-

porting a privilege of assisting vessels unnecessarily, or under circumstances unreasonably injurious to the interests of cargo owners. But, if the only purpose of the clause were to protect the shipowner against liability as an insurer against the excepted risks, that intention could have been easily expressed, and in short and explicit terms. The nature of the privilege, as well as the language, requires that it should not be fettered by a narrow or illiberal construction. "It is the duty of all ships to give succor to others in distress. None but a freebooter would withhold it." Lord Stowell, in Laing v. Glover, 5 Taunt. 49. A deviation to save life is justifiable, and, while the weight of authority has not sanctioned a deviation made merely to save property, the tendency of modern opinion, founded upon considerations of public policy, is illustrated by the recent act of congress which provides that neither the vessel nor her owners shall be held responsible for damage or loss resulting from attempting to save life or property at sea, or from any deviation in rendering such service. Act Feb. 13, 1893. The clause does not require a contracted construction upon the theory that it is a one-sided provision, which inures merely for the benefit of the shipowner. Not only is it to be assumed that the cargo owner has received a consideration for it in a reduced rate of freight, but, as was pointed out in Stuart v. Navigation Co., 32 Law T. (N. S.) 257, such a provision is for the general benefit of the whole body of shippers, whose losses caused by the delay incident to the exercise of the privilege in some instances are counterbalanced by their gains in others, when but for it their property would perish. Undoubtedly, some limitation must be implied in the general liberty to tow and assist, given by the clause. In Stuart v. Navigation Co., supra, the question was somewhat considered, and the observations of the judges show the difficulty in defining the precise scope of the privilege, and attempting to decide when and how far a vessel may go to the assistance of another in exercising it. We think it may be rationally construed as authorizing the vessel, when, in the ordinary course of the voyage, she falls in with another in distress, to go to her assistance, and tow her to such place of safety as, under the particular circumstances of the case, is most reasonably accessible. For these reasons, we are unable to accede to the construction of the clause urged for the appellant, and placed upon it by the learned district judge whose decision we are called upon to review, and we conclude that the deviation made by the steamship was justifiable, as within the terms of the privilege. This conclusion leads to an affirmance of the decree, and renders it unnecessary to consider whether the steamship should have been exonerated upon any other ground by the district court. The decree is affirmed, with costs.