### THE HEKLA.

### NATIONAL STEAMSHIP CO., Limited, v. THE HEKLA.

#### (District Court, E. D. New York. July 7, 1894.)

**1. SALVAGE COMPENSATION—STEAMSHIP WITH BROKEN THRUST SHAFT.**
 A steamship on the Atlantic ocean, with her thrust shaft broken, must be considered as in a position of peril, although the shaft may be temporarily mended on board; and towing her into port is a meritorious service, entitled to a liberal reward.

**2. SAME.**
 A steamship worth, with her cargo, $213,300, and having 843 passengers on board, broke her thrust shaft on the Atlantic ocean, and was towed to New York by another steamship, worth $200,000, having a cargo valued at $248,000, and freight amounting to $13,510. The towage occupied nine days, and was skillfully rendered, in rough weather, at an expense of $3,681.05. *Held*, that $30,000, with the expenses, was a reasonable reward.

**3. SAME—RIGHTS OF CARGO OWNERS.**
 A shipper whose cattle suffer damage by reason of their detention on board during the extra time consumed in rendering salvage services is not entitled to share in the compensation. Goldsmith v. North German Lloyds, 23 Fed. 820, followed.

This was a libel by the National Steamship Company, Limited, against the steamship Hekla, her cargo and freight money, to recover for salvage services. The owner of cattle forming part of the cargo of the vessel rendering the services intervened, claiming to be entitled to share in the salvage award.

John Chetwood, for libelant.
Wing, Shoudy & Putnam, for claimants.
Butler, Stillman & Hubbard, for intervener.

BENEDICT, District Judge. This is an action to recover salvage compensation for services rendered the English steamship Hekla by the National steamship America in April, 1893. The Hekla, being a steamship of 2,113 tons, bound to New York, having a cargo on board consisting in part of exhibits for the World's Fair, and 843 passengers, on March 24th, when about 1,500 miles from New York and 250 miles from St. Johns, Newfoundland, broke her thrust shaft. The shaft was repaired, and on the evening of the 25th the steamer proceeded under steam towards New York. On the 27th a council of the officers of the steamer was held, at which it was decided to accept

the first assistance offered, "as the ship, during the last 24 .hours,. had only made 110 miles, in calm weather, and the first and second engineers declared it would not be advisable to make more revolutions, * * * and also that the repaired shaft might again break." Thereafter, she signaled the steamship Normandie, bound to New York, but assistance was refused her, and she proceeded slowly. On April 1st the repairing to the shaft gave way, and the ship, lying in the trough of the sea and rolling heavily, became helpless. About 12 hours afterwards she signaled the steamer America, a steamer of the National Line, bound to London. At her request the America lay by her, the heavy weather making it impossible to make fast until April 3d, when the towline was made fast,. and the America proceeded to tow the Hekla towards Halifax. Meanwhile, an attempt to again repair the thrust shaft was being made, which succeeded in enabling steam to be used. At the request of the Hekla the America then changed her course for New York, the engine of the Hekla assisting at moderate speed. On April 4th the repairing to the shaft again gave away, and the engines of the Hekla stopped. For the third time, repairs to the shaft were undertaken, the America continuing on her course to New York. On April 7th, when the steamer had reached pilot ground, the repairs to the shaft were completed; but the Hekla did not connect her screw until after the pilot had spoken her, which was on the morning of the 9th of April. Thereafter, the Hekla used her steam until the towing lines of the America were finally cast off, near the Sandy Hook light, and the Hekla went up to Quarantine under her own steam. The America proceeded to her wharf in New York, took in fresh coal and fodder, and shortly after resumed her voyage for London; having disbursed for coal, fodder, and port bills, $3,681.05. Much of the time during the rendition of this service by the America the weather was heavy; part of the time the wind blowing a gale, in which the Hekla's line parted. The Hekla was in danger of being short of provisions, and was supplied with beef, milk, butter, etc., by the America. The value of the Hekla, in her condition on arrival, was $70,000; the value of the cargo of Chicago exhibits, $90,400; the value of sundry merchandise, $52,900; rendering the total amount subject to salvage $213,300. The value of the America was $200,000, and she had a cargo valued at $248,000, and freight amounting to $13,510.

That a meritorious salvage service was rendered by the America to the Hekla is not disputed, but the claimants insist that a very moderate compensation should be allowed, upon the ground that the Hekla was not disabled by the breaking of her thrust shaft and only required assistance to expedite her progress. This proposition is based upon the fact that the Hekla's shaft was repaired, and able to work, by the time the steamer reached New York. Reference is made to the case of The Umbria, which vessel was navigated safely into port, a distance of 800 miles, with a mended shaft, without assistance. I cannot agree with the proposition that this is a case of acceleration only, for while it is true that the Umbria was navigated

in safety, with a repaired thrust shaft, nearly the same distance as was navigated by the Hekla, and while it is also true that in this instance the Hekla's thrust shaft was repaired three times, still this does not satisfy me that the delay was the only danger to which the Hekla was exposed. How long the Hekla's shaft, as finally repaired, would have endured, cannot be told. Each time that it was repaired before, it broke; and it appears in evidence that her owners—having, on her arrival in New York, an opportunity to ascertain the nature of the repairs made to the shaft—became satisfied that it would be unsafe to send her home again in that condition, and accordingly detained her in New York until a new shaft could be brought out from the other side. This shows, as it seems to me, that in the opinion of maritime men a steamship on the ocean, with her thrust shaft broken, is to be considered in a position of peril, although the shaft may be repaired on board. The officers of the ship thought her in peril, for, although they had repaired the shaft, they determined, in council, to take the first assistance that should be offered.

In view of the character of the property saved, the number of passengers on board the Hekla, the peril to passengers and to cargo, the constant exertion put forth in rendering the service (the master receiving severe injury in its performance), the skill displayed in the towing, and the successful result of the effort; considering, also, the value of the property at risk, the value of the salving vessel, and the resulting delay of 12 days,—I am of the opinion that the sum of $30,000 is a proper salvage compensation. To this sum I add the amount of money actually expended by the America in recoaling, etc., in New York.

The America, at the time of the rendition of this service, had on board 160 head of live cattle, which she was transporting to London. The owner of these cattle has intervened in this action, and claims to be entitled to share in the salvage award because of the fact that the detaining of his cattle on board the America during the 12 days that she was engaged in the rendition of this salvage service caused injury to his cattle. But the case of this shipper is similar to that presented to this court in the case of Goldsmith v. North German Lloyds, 23 Fed. 820. The decision in that case compels the dismissal of the petition. Following that decision, the petition of the interveners is dismissed, but without costs.

Let decrees be entered in conformity with this opinion.