THE DANIA.

NETHERLANDS–AMERICAN STEAM NAV. CO. et al. v. THE DANIA.

(District Court, E. D. New York. November 11, 1895.)

SALVAGE—COMPENSATION.
    A steamship valued, with her cargo and freight, at $426,000, becoming utterly helpless from a broken shaft, about 300 miles from New York,

was towed to that port by another steamer in two days and two hours, without difficulty, during weather which was fine, excepting that a dense fog prevailed about half the time. The towing steamer was a slow vessel, to which the loss of a few days was not important. *Held*, that the service was a salvage service for which $17,500 was a proper award, including therein some $700 of expenses. The Daniel Steinman, 19 Fed. 919, distinguished.

This was a libel by the Netherlands-American Steam Navigation Company and others against the steamship Dania, her cargo and freight, to recover for salvage services embracing a towage occupying two days and two hours.

Wing, Putnam & Burlingham, for libelants.
Wheeler & Cortis, for claimants.

BENEDICT, District Judge. This is an action brought by the owners of the steamship Werkendam against the steamship Dania, to recover salvage compensation for services rendered to the Dania in June last, under the following circumstances: The steamship Dania, owned by the Hamburg-American Packet Company, bound on a voyage to New York, having on board 402 passengers, and valued, with cargo and freight, at $426,000, when she arrived at a point some 360 miles from Sandy Hook, in Long. 66 03, Lat. 41.11, stopped to take on board a pilot. When she attempted to start again, it was found impossible to move her propeller, and examination showed that the shaft was broken in the nut outside the hull. When the shaft broke is not known, but it appears that the propeller revolved under the action of the engine until the engine stopped; and, when the engine stopped, the propeller dropped away from the shaft, and it was impossible to move it or to repair the shaft, the break being outside the hull. The steamer became absolutely helpless. Her hull, however, was sound and staunch. As soon as the break of the shaft was discovered, the pilot boat, which had not passed out of sight, was hailed; and, when her boat returned to the steamer, the request was made that any steamer that might be fallen in with by the pilot boat should be notified of the position and situation of the Dania; and danger signals were given to the pilot boat in order to enable her to stop any vessel she might meet. This was about 7 o'clock p. m. The weather was fair, and the sea smooth. At this time the Dania was about 70 miles southeasterly from George's Shoal, and, as subsequent observation shows, she was slowly drifting towards that shoal. No vessel was then in sight. About 3:30 of the next morning, the pilot boat sighted the Werkendam, bound for New York, being some 10 miles distant from the Dania, but not visible to her on the horizon. The Werkendam, upon being informed by the pilot boat of the position and the danger of the Dania, changed her course, and, after about an hour's steaming, approached the Dania. At that time the Dania was showing three lights in the forerigging, and flags, indicating a desire to be taken in tow. The Werkendam undertook to render her that service, and, at a little after 7 o'clock a. m., made a hawser fast to her, and started for New York, where she arrived with the Dania at 9 o'clock on Saturday morning.

The voyage of the Werkendam with the Dania in tow was uneventful. The weather was fine, and no hawser was broken. The

only noteworthy circumstance attending the service is that, for half the time at least, the vessels were enveloped in a dense fog. The weight of the evidence is that during part of the time the fog was so dense that the Dania could not be seen from the Werkendam. The most that the witnesses from the Dania claim is that the Werkendam was always visible to them two ship's lengths away. This circumstance increased the peril of the services very much. Fog may be said to be the peril of the seas. In this instance the peril was increased by the fact that the code of signals makes no provision for notifying approaching vessels of the presence of a tow behind a steamer. It was not impossible, therefore, that if the Werkendam had fallen in with a vessel crossing her course, while the Werkendam might have escaped collision, the Dania, being towed by a long hawser, would be liable to be struck, and perhaps sunk; in which case all salvage compensation would be lost to the Werkendam. The risk which ordinarily attends the towing of a steamer at sea was, in my opinion, very considerably increased in this instance by the fog. I have no hesitation, therefore, in holding that the Dania was rescued from a position of peril by meritorious services performed by the Werkendam, and that the Werkendam is entitled to salvage compensation therefor. As to the proper amount, reference has been made to the case of The Daniel Steinman (decided by this court) 19 Fed. 919, where this court awarded $25,000 for a salvage service rendered to the steamship Daniel Steinman by the steamer Republic. The injury to the Daniel Steinman was very similar to the injury to the Dania. The service to the Daniel Steinman occupied 36 hours. It was rendered in fine weather, and there was no fog. The differences between that case and this one are that the Daniel Steinman could possibly have reached a port of safety under her own sail without assistance; there is no evidence in this case that the Dania could have done so. The value of the Daniel Steinman, freight and cargo, was $252,500; the value of the Dania, her cargo and freight, is $426,000. The services to the Daniel Steinman were rendered by the steamer Republic, a powerful steamer of the White Star Line, where regularity of arrival and departure are considered of the greatest importance; the Werkendam was a slow steamer, to which a few days' delay was unimportant. The Republic was loaded with passengers and freight bound for New York. Her value, including cargo and freight, was $780,000. She had on board 697 cabin passengers, and the mails. The distance the Daniel Steinman was towed by the Republic was about twice as great as the distance in this case, but the risk in this case was more, on account of the fog. No two salvage cases are alike, and the difference between the steamship Republic and the steamship Werkendam makes a difference between the case of The Daniel Steinman and the present case.

Taking all the circumstances of this case into consideration, I am of the opinion that $17,500 is a proper sum to be awarded as salvage compensation. I include in this the $700 expenses of the Werkendam; this sum is first to be paid to the owners of the Werkendam, and the remainder distributed among the owners, master, and crew.