## LA HESBAYE.

## NATIONAL STEAMSHIP CO., Limited, v. LA HESBAYE.

### (District Court, D. New York. January 6, 1896.)

SALVAGE COMPENSATION—TOWAGE.

A steamer of about 2,800 tons, worth $100,000, bound from London to New York, without passengers, found another steamer, bound for the

same port, of about the same size and value, which had lost her rudder, and was signaling for towage. As the vessel was too large to be towed without a rudder, it was arranged that she should tow the salving vessel, the latter acting as a rudder for her. In this manner they proceeded to New York, a distance of 1,100 miles; the service occupying nine days, and the salving vessel losing a little over four days. There was much rough weather, and the hawser parted three times. The service was difficult, owing to the necessity for regulating the speed of the tow so as to keep the hawser taut, but at not too great a tension. It did not appear that the delay occasioned any derangement in the salving vessel's business. *Held*, that $8,000 was a proper award.

This was a libel by the National Steamship Company, Limited, against the tank steamer La Hesbaye, to recover compensation for salvage services.

Wing, Putnam & Burlingham, for claimants.
John Chetwood, for libelant.

BROWN, District Judge. At about 5 o'clock in the afternoon of the 8th of March, 1895, as the libelant's freight steamer Spain was on her way from London to this port, she found the tank steamer La Hesbaye in need of assistance at a distance of about 1,100 miles from New York. La Hesbaye was in ballast, bound from Antwerp to New York. At about 2 o'clock of the day before she had broken her rudder post, and lost her rudder. During the 27 hours following before the Spain came to her assistance, she had made about 68 miles. The Spain went to her assistance in answer to signals of distress, asking for towage. The two steamships were about the same size; La Hesbaye being 2,519 tons gross, the Spain 2,794, and each, according to the stipulation in the cause, were of the value of $100,000. La Hesbaye being deemed too large a steamer to be towed without a rudder by the Spain, it was agreed that the Spain should go behind and act as a rudder while towed by La Hesbaye. The hawser from the Spain was attached, and the towing began on the evening of the 8th; but soon after starting, the hawser parted near the thimble through which it ran, and further work was suspended until the next day. The following morning another hawser from La Hesbaye was joined to that of the Spain, and the towage resumed. At first it was proposed to go to Halifax, the nearest port; but on the 12th it was concluded to continue on to New York, the destination of both vessels, where both arrived on the 17th, after nine days of towage, and without any further damage sustained by either. The time lost by the Spain in this service was a little over four days. She had no passengers, and it does not appear that this delay occasioned any derangement in her general business.

The service of the Spain was doubtless a highly meritorious one. La Hesbaye was in a helpless condition. Her sails could not be used to any advantage; and the vessel being light was unmanageable, except in favorable weather. It was also the stormy season of the year. During the nine days of towage there was much rough weather and one night of dense fog.

The master of the Thingvalla testified that a smaller vessel than the Spain, and even a fishing schooner, might have been more serviceable as a rudder. Other witnesses express a different opinion. This does not much affect the question, I think, for no other vessel was at hand.

The service, I am also satisfied, was one of no small difficulty. The hawser parted three times, and the necessity of regulating the superior speed of the Spain to that of La Hesbaye, so as to keep the hawser taut but not at too great a tension or so as to require too much towage from La Hesbaye, was a matter requiring constant watchfulness, and made the work more difficult and trying for the Spain than ordinary towage would have been. During the whole time all on board were kept in readiness for immediate action, and the watches were doubled. The lack, also, of any international rule for indicating by signals a tow at sea during fog, increased to some extent the danger to the Spain during fog, inasmuch as she had to rely upon the signals of La Hesbaye, a cable's length ahead. Though some of the other difficulties in the towage were no doubt owing to the speed of the Spain under her own engines, this I think is not to be considered as a fault on her part, but rather as a difficulty inherent in such an unusual undertaking under the existing circumstances.

The case has, however, no such features as seem to me to demand a very large award. In the case of The Gallego, 30 Fed. 271, the property saved was $476,764, and the vessel was drifting rudderless along a lee shore. Here there was no such immediate danger. The salving ship was there also worth twice as much, lost thrice as much time, and missed her regular sailing day. In the case of The Hekla, 62 Fed. 941, there were 843 passengers on board; the value of the ship and freight subject to salvage was upwards of $200,000; the America, the salving vessel, was double the value of the Spain, and she turned back upon her course, and was detained three times as long. The service there seems also to have been one of more difficulty, and the master in that case "received severe injury in its performance." In the case of The Dania, 70 Fed. 398, recently decided by Judge Benedict, the towage was less than in this case; but the value of the Dania and cargo was over four times as great, and the Dania had on board 402 passengers, while here there were none.

Taking all the circumstances into account, and having reference to the above cases and to others so far as analogies serve, I think that $8,000 will be a proper award in the present case. See The Florence, 65 Fed. 248, and cases there cited. Of this amount $5,600 should go to the owners and $2,400 to the master, officers and crew. Out of the last I allow, first, $300 to the master, and direct the residue to be divided among the master, officers and crew, in proportion to their wages, with costs.