SCHWARZCHILD et al. v. NATIONAL STEAMSHIP CO.

GOLDSMITH v. SAME.

(District Court, S. D. New York. April 28, 1896.)

BILL OF LADING—SALVAGE PRIVILEGE—DAMAGE TO SALVOR'S CARGO BY DELAY
—UNNECESSARY DEVIATION—RES ADJUDICATA.

The clause in bills of lading reserving leave to "tow and assist vessels in all situations," does not justify an unnecessary deviation in rendering a salvage service by going to a distant port, instead of to the one most reasonably accessible in the particular circumstances of the case: *Held*, therefore, that the defendants' steamer America, after undertaking the towage of the disabled steamer Hekla to Halifax, a near, safe, and reasonably sufficient port, was not justified in taking her to New York, involving about three times the delay incident to towage to Halifax; and that the defendants were therefore liable for the depreciation in the America's cargo of live cattle, and the fall in market price during the additional delay caused by towage to New York instead of to Halifax. *Held*, also, that a previous dismissal of the libellants' petition to participate in the libel for salvage, brought against the Hekla by the owners of the America, was not res adjudicata as respects the present claim for damages.

In Admiralty—Damages to Cattle—Salvage.

Butler, Notman, Joline & Mynderse, for libellants.
John Chetwood, for respondents.

BROWN, District Judge. (1) The previous decrees dismissing the petitions of the above libellants upon their intervention in the salvage suit brought by the owners of the America against the Hekla (62 Fed. 941) cannot be treated as res adjudicata, as respects the above libels, inasmuch as the subject matter of the litigation is not the same. In the former petitions the claim made was a right to participate in a salvage award, in a suit in rem against the Hekla, in which a lien upon that ship was an essential condition. In the present libels the claims are for damages against the owners of the America, as carriers, for an alleged violation of their contract of carriage.

(2) The libellants claim to have suffered damage through an unnecessary detention of their cargo of live cattle by the America in rendering a salvage service to the Hekla, by towing the Hekla to New York after she had once begun her towage towards Halifax, the nearest port; and that by this change the America unnecessarily greatly increased the damages to the libellants' cargo incident to a towage to Halifax, which it is claimed is all the salvage service that was reasonably necessary. The respondents justify under the stipulation in the bill of lading, giving the America leave to "tow and assist vessels in all situations." The proper construction of this clause, and the limitations to be put upon it, were considered in the case of The Wells City, 57 Fed. 317, 318, in this court, and on appeal in 10 C. C. A. 123, 61 Fed. 857, 859. The result of the discussion in the court of appeals, as indicated in the opinion delivered by Wallace, Circuit Judge, is that while such a general privilege in the

bill of lading is not to be construed to the extent of its literal scope when that would be inconsistent with the carrier's contract, or defeat its substantial objects, and will not authorize any unnecessary deviation, it does authorize the salving vessel, "when in the ordinary course of the voyage she falls in with another in distress, to go to her assistance, and to tow her to such place of safety as under the particular circumstances of the case is most reasonably accessible." 10 C. C. A. 125, 61 Fed. 859.

In the present case no other reason is disclosed for the deviation of the America from the course first taken for Halifax, to which port she had agreed to tow the Hekla, than that a considerable portion of the cargo of the Hekla was destined for the Chicago Exposition, and that New York was a more convenient port for the direct transportation of the cargo than Halifax, as well as more convenient for the Hekla's passengers. The distance to Halifax at the time when the America, after several hours towage, turned towards New York, was about 300 miles; the distance to New York, about 668 miles. Halifax is a good and sufficient port of refuge, to which vessels like the Hekla, under similar circumstances, are frequently towed. It is well furnished with all needed supplies and shipping facilities. Had the America gone to Halifax as at first agreed, on resuming her voyage thence to Deptford, she would have had but little farther distance to travel than from the point at which she undertook the salvage operation. The return to New York was a return to the port of departure, practically abandoning the current voyage and involving an additional distance of about 1336 miles instead of about 350. The return to New York involved an actual delay in the delivery of the cattle, beyond the ordinary time for arrival at Deptford, of from 12 to 14 days; whereas, if the vessel had gone to Halifax, the delay upon an average voyage would not have exceeded 3 or 4 days, and the America would have arrived in abundant time for the regular market sale at Deptford on April 17th. The actual arrival was only in time for the sale of April 27th, when the market price had decreased about five pence per stone of eight pounds. The respondents recovered for the salvage service to the Hekla and her cargo $30,000, besides the additional sum of $3,681.05 for expenses and disbursements in the salvage operation. 62 Fed. 941.

There can be no doubt, I think, that the salvage award was very much increased in consideration of the towage to New York, rather than to Halifax; nor that the motive of the America in returning to New York was the enhanced salvage award she would thereby obtain. The proof does not indicate any necessity for the long return to New York. It was a mere question of convenience, and of some possible expedition of the cargo on the one side, and the expectation of an increased award on the other.

It cannot be contended that Halifax was not a reasonable port of refuge. Familiar usage, and the contract originally made between the America and the Hekla to go to that port, are sufficient proof on this point. That was the port that was "most reasonably accessible," as it seems to me, within the ruling of the court of appeal in The Wells City, supra.

The deviation from that port was neither necessary nor within the objects intended to be secured by the clause in the bill of lading above referred to. It is essentially unjust that such a deviation should be upheld at the expense of the cargo when it is not necessary to the safety of ship and passengers, but is merely for their convenience and the increased profit of the salvor. The damages actually sustained by the cargo beyond that incident to towage to Halifax should, therefore, be allowed.

(3) The stipulation in this case that the limit of liability of the shipowner should "not exceed one pound sterling in respect to each animal shipped" is not a stipulation that can be brought within the principle of the case of Hart v. Railroad Co., 112 U. S. 331. 5 Sup. Ct. 151. This stipulation is not, like that, an agreed valuation put upon the article carried. The amount of one pound sterling was here less than the freight paid in advance. It cannot be upheld as a reasonable stipulation in liquidation of damages. Calderon v. Steamship Co., 16 C. C. A. 332, 69 Fed. 574, affirming 64 Fed. 874. It does not purport to have any such object. It is a mere stipulation that the carrier shall not be liable beyond a certain small sum. See Primrose v. Telegraph Co., 154 U. S. 1, 14 Sup. Ct. 1098. As against negligence of the carrier, the invalidity of such a stipulation has been adjudged in Scruggs v. Railroad Co., 18 Fed. 318, and Eells v. Railway Co., 52 Fed. 903. It is equally invalid as against an intentional deviation, or what is in legal effect the same thing, an unnecessary and unjustifiable extension of a salvage service.

The libellants are entitled to decrees for the deterioration caused by this unnecessary delay to the cattle themselves, and also for the fall in market price after April 16th (Railroad Co. v. Estill, 147 U. S. 591. 616, 13 Sup. Ct. 444; The Caledonia, 157 U. S. 124, 139, 15 Sup. Ct. 537, affirming 43 Fed. 681, 50 Fed. 567), by which time at least the America would ordinarily have arrived from Halifax. If the parties cannot agree upon the amount, a reference may be taken for the purpose.

Decrees accordingly.