**SWIFT & CO. v. FURNESS, WITHY & CO., Limited.**

(District Court, D. Massachusetts. May 10, 1898.)

No. 773.

1. BILLS OF LADING—CONSTRUCTION.
   When perishable goods are shipped, and the carrier is to receive adequate pay, no construction of the contract is admissible which will permit the carrier, arbitrarily, and without reason or necessity, to deprive the shipper of the benefit resulting from such shipment.

2. MARITIME LAW—BILL OF LADING—"DEVIATION."
   The words "with liberty * * * to make deviation," in a bill of lading, give the carrier the right to make only such departures from the voyage as are necessary and reasonable.

3. SAME—RESPONSIBILITY OF CARRIER.
   A provision in a bill of lading that meat "is to be shipped wholly at the risk of the shipper, and that the owners assume no responsibility therefor during the voyage," refers only to the voyage contemplated by the parties, and not to an additional voyage arbitrarily made by order of the owner of the ship.

This was a libel in personam by Swift & Co. against Furness, Withy & Co., Limited, owner of a steamship, for delay in delivering certain beef shipped by such steamship.

Henry M. Rogers, for libelant.
Thomas H. Russell, for respondent.

BROWN, District Judge. Swift & Co., exporters of fresh beef, bring this libel in personam against Furness, Withy & Co., Limited, a British corporation having a place of business in Boston, in this district, owner of the steamship Durham City, for damages arising from delay in delivering at London, 1,229 quarters of beef, causing deterioration of the beef and loss of market. The beef was shipped at Boston in good condition, was properly cared for on the voyage by the men in charge, and the refrigerators were provided with a proper and usual supply of ice and salt for the ordinary voyage, of 14 to 16 days, and for 4 or 5 days in addition. The ship sailed for London October 6, 1894, making an ordinary voyage, and arrived off Dover October 21st, with a London pilot on board. There she received orders from the owners to go to Havre to land cattle, a part of her cargo. The ship went to Havre, and remained there until October 28th, when she sailed for Flushing, in Holland, where she landed sheep; sailing thence October 29th, and arriving at London October 30th. While at Havre the weather was muggy, and a compost heap over the refrigerators added to the heat. Additional salt and ice were purchased at Havre, and all proper exertions were made to prevent deterioration. Nevertheless there was damage to the beef, attributable to the prolongation of the voyage. Upon the evidence it appears that a delay of seven days resulted from the change of course. Though the bill of lading recites that the vessel "is lying at the port of Boston, and bound for London," the respondent contends that the vessel was

not obliged to pursue a direct voyage, and that, by express contract, there is no liability for damage to the beef. The clauses of the bill of lading relied on in defense are the following:

"With liberty to sail with or without pilots, to make deviation, and to call at any intermediate port or ports for any purpose, and to tow and assist vessels in all situations. * * * It is hereby understood and agreed that meat and other cargo to be carried in the refrigerator is to be shipped wholly at the risk of the shipper, and that the steamship owners assume no responsibility whatever therefor during the voyage; and steamships are not to be held liable for any loss or damage to meat or other cargo in the refrigerator, however arising, unless refrigerators are interfered with by the steamship's officers or crew."

It is not contended that Havre and Flushing are "intermediate ports." Reliance is had solely upon the word "deviation," to justify the return of the vessel from off Dover to Havre, the detention there, and the trip to Flushing. Citing Hostetter v. Park, 137 U. S. 40, 11 Sup. Ct. 1, the respondent claims' that deviation is "a voluntary departure, without necessity or reasonable cause, from the regular and usual course" of a voyage, and that the use of the word "deviation" in the bill of lading is an express stipulation "permitting such deviations, though they be unnecessary and unreasonable." This contention disregards, however, a most important part of the context in the opinion in Hostetter v. Park. "Deviation," in that opinion, is defined "in reference to the terms of a policy of marine insurance." This limitation of the definition to the special subject-matter under consideration is significant, and in accordance with a well-known rule of interpretation. In its primary signification, the word "deviation" would include a departure from the direct course of the voyage, whether reasonable or unreasonable, with or without necessity. As, however, from necessity, or in the exercise of a reasonable judgment, departures are made that present no substantial reason for invalidating the contract of insurance, and as known usages are presumed to be in the contemplation of the parties, in construing a contract of insurance the word is not given its broadest meaning, but a meaning consistent with the subject-matter in hand. It then includes only such departures as are unreasonable, unnecessary, or not contemplated. It may then be said that a departure which is of such character is a deviation, but that one which is reasonable, necessary, or according to usage is not a deviation. Accuracy, however, would require the foregoing sentence to be supplemented by the words, "in reference to the terms of a policy of marine insurance." The definition is thus limited by the supreme court. The case of Hostetter v. Park is therefore seen to be a direct authority in support of the rule that construction must be guided by reasons pertaining to the subject-matter. The confusion of thought arising from isolating particular words of a contract is, with clear discrimination, pointed out in O'Brien v. Miller, 168 U. S. 287–297, 18 Sup. Ct. 140. Such confusion is increased when we not only separate particular words from the whole contract and from the special subject, but seek to give to a word thus isolated, not its ordinary signification, but a meaning specially limited by the context of a

distinct contract upon a distinct subject. The argument of the respondent may be thus analyzed: First, it disregards the context of the word "deviation" when used in this bill of lading; secondly, it employs the context of a policy of marine insurance to place a limited meaning upon the word "deviation"; and, finally, it seeks to substitute the limited meaning thus obtained for the term employed in the bill of lading. Following out this method to its necessary conclusion, the contract would be as follows: First, an agreement to transport perishable fresh beef from Boston to London; second, reservation of a right to make "voluntary departure, without necessity or reasonable cause, from the regular and usual course" of a voyage. If, under the latter clause, an owner may do as he pleases, without reference to necessity or reasonable cause, it is difficult to frame a statement of obligations to the shipper which will concede to the owner these rights, and prevent him from going first to Australia or Hong Kong, and thence to London. If he has one clause in his contract that permits him to go on such a voyage as he pleases, and a second that holds him harmless for the damage to the beef, then the argument based on these clauses must preclude a recovery. The unsoundness of the construction for which the respondent contends sufficiently appears by tracing it to its legitimate conclusion. In attempting a proper construction of the contract, we may consider the fact that the libelants, Swift & Co., have for many years been the largest shippers of dressed beef from the United States to Great Britain, and that they had for a long time, and on many voyages, shipped their beef by the Durham City and by the Furness Line, so that the defendant was thoroughly familiar with the business. "The elementary canon of interpretation is, not that particular words may be isolatedly considered, but that the whole contract must be brought into view, and interpreted with reference to the nature of the obligations between the parties, and the intention which they have manifested in forming them." O'Brien v. Miller, 168 U. S. 287–297, 18 Sup. Ct. 140. From the important fact that perishable beef, requiring ice and salt, was to be transported, and as the defendant was to receive adequate pay therefor, we are forced to preclude any construction that permits the defendant, arbitrarily, and without reason or necessity, to deprive the shipper of the benefits resulting therefrom. "The law does not allow a public carrier to abandon altogether his obligations to the public, and to stipulate for exemptions which are unreasonable and improper, amounting to an abnegation of the essential duties of his employment." Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469. If rules of construction forced us to adopt the view of the contract urged by the defendant, and to hold that it provided that the owner might delay the delivery of goods at his pleasure, this would not avail the defendant; for we should then be compelled to hold the provision void, under the act of February 13, 1893, c. 105 (27 Stat. 445).

Adopting the rules of construction to which we have referred, the word "deviation," in the bill of lading, must be held to give to

the owner only a limited right of departure from the voyage; and the limits must be those of necessity, and reasonable regard for the rights of both the shipper and carrier, growing out of the nature of the principal contract. It may appear paradoxical to say that in a contract of marine insurance the word "deviation" includes only unnecessary and unreasonable departures from the voyage, and that in a bill of lading it means only necessary and reasonable departures from the voyage. The paradox exists, however, only to the superficial view, and disappears when we observe that in neither case is the meaning derived from the word "deviation," simpliciter, but that in each case the meaning results from a term plus its context, and that in the two cases the context is different. Isolated, the word means a departure, reasonable or unreasonable, with or without necessity. If in one case we may limit it to mean unreasonable departures only, in another we may limit it to mean reasonable departures only. The apparent inconsistency arises because the approach to the question is from opposite sides. When we use the word in a sentence of prohibition, necessary or reasonable deviations are not prohibited. When it is used in a sentence of permission, it permits only necessary, reasonable, or contemplated deviations. Under both bill of lading and marine insurance policy, reasonable, necessary, and contemplated deviations are permitted. Unreasonable, unnecessary, and arbitrary deviations are held breaches of contract. The clause providing that meat "is to be shipped wholly at the risk of the shipper, and that the owners assume no responsibility therefor during the voyage." etc., does not afford the carrier protection for damage arising after the vessel was diverted from her voyage, and sent upon what must be regarded as an additional and independent voyage to Havre and Flushing. This clause refers to the voyage contemplated by the parties, and to deviations reasonably incident thereto, not to an additional voyage arbitrarily made by the order of the owner. It satisfactorily appears that the change of course did not arise from any necessity of the ship, or from any causes connected with her navigation. On October 22d the owners of the steamship in London notified the consignees named in the bill of lading that the ship would arrive at London docks on Monday night, October 22d, in time to discharge the beef on the 23d. On October 22d the libelants, upon this announcement, called on the owners, and paid the freight, £236. 10s., receiving the assurance that the ship would be at the docks on that day. The change of course was made for the benefit of another shipper, Nelson, Morris & Co., of Chicago, who, as admitted by the answer, had shipped upon said vessel, on said voyage, certain live cattle and sheep. Having thus deliberately turned the vessel back upon an additional voyage, the owners must be held liable for a breach of contract with the libelants, and for all damages resulting therefrom.

I find as facts that, but for the return to Havre, the beef would have been delivered on October 23d, and that the libelants used due diligence to reduce the damages, and to care for the beef during the detention. The libelants are entitled to decrees for the de-

terioration, and for any fall in the market price after October 23d, and a reference may be taken to determine the amount of the damages. Railroad Co. v. Estill, 147 U. S. 591–616, 13 Sup. Ct. 444; Schwarzchild v. Steamship Co., 74 Fed. 257. See, also, The Wells City, 57 Fed. 317, 318; Id., 10 C. C. A. 123, 61 Fed. 857–859.