## THE MENOMINEE.*

(District Court, S. D. New York. January 26, 1924.)

No. 923.

Salvage ⬡⟾18—Under Harter Act and bill of lading exonerating ship aiding another vessel for damage to cargo, salved vessel held not liable to cargo owner.

Under Harter Act, § 3 (Comp. St. § 8031), and bill of lading exonerating ship for damage to cargo due to assisting another vessel in distress, salvor vessel is not liable to cargo owner for damage caused by such delay, and salved vessel cannot be held liable to cargo owner on salvor vessel.

In Admiralty. Libel by Swift & Co. against the steamship Menominee, claimed by the Atlantic Transport Company, Limited. Libel dismissed.

Lord, Day & Lord, of New York City (Allan B. A. Bradley and Sherman Baldwin, both of New York City, of counsel), for libelant.

Burlingham, Veeder, Masten & Fearey, of New York City (Roscoe H. Hupper, of New York City, of counsel), for claimant respondent.

AUGUSTUS N. HAND, District Judge. The libelant shipped cargo on the steamship Montana at New York for transportation to London. The bills of lading contained the following clauses:

"The vessel shall be at liberty * * * to tow and be towed * * * to assist vessels in distress, to deviate for the purpose of saving life or property. * * * The ocean carrier shall not be liable for * * * any loss or damage caused by the prolongation of the voyage."

Section 3 of the Harter Act (Comp. St. § 8031) contains the provision that neither the vessel transporting merchandise nor her owner shall be held responsible for loss resulting "from saving or attempting to save life or property at sea, or from any deviation in rendering such service."

⬡⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Decree affirmed 300 Fed. 464.

While the Montana was upon her voyage, the steamship Menominee, who had become disabled, signaled the Montana for help, and the latter altered her course and towed the Menominee for about two weeks to a point off the Isle of Wight. By reason of the salvage service the Montana was greatly delayed, and her cargo was damaged in the alleged sum of $5,504.88, for which the libelant, as cargo owner, has libeled the Menominee in this suit. The claimant, as owner of the Menominee, has filed exceptions to the libel on the ground that it does not state a cause of action.

It was held in The Wells City, 61 Fed. 857, 10 C. C. A. 123, where the bill of lading resembled the one in the present case, that there was no liability of a vessel to her cargo when in the ordinary course of her voyage she met a vessel in distress and towed her to such a place of safety as was reasonably accessible. If this be so, it is difficult to discover under what theory there can be a liability on the part of the salved vessel. Certainly there is no contractual relation between the owner of the cargo and the salved vessel, and the latter, in asking for and receiving assistance, surely commits no tort affecting the cargo carried by the salvor. The only conceivable ground upon which relief may be urged is that of unjust enrichment of the salvor at the cargo owners' expense. Under such a theory the salvage award earned through a deviation, which, though permissible, proved injurious to the cargo, ought to inure in part to the cargo owner. The difficulty with this theory is that the vessel rendering the assistance is under no liability for the deviation, as she might have been before the Harter Act (Comp. St. §§ 8029–8035) and without the exception in the bill of lading, and secures no salvage to compensate her for the risk of her cargo.

The situation in Mason v. Ship Blaireau, 2 Cranch, 240, 2 L. Ed. 266, was quite different from the present. There the supercargo, who represented the cargo owners, assented to the deviation and performed salvage services. Because of the consent by the owners' agent to the deviation, the court treated the cargo as being at their risk and allowed them to share in the salvage award. In the case of Bond v. The Cora, Fed. Cas. No. 1,621, Mr. Justice Washington, sitting in the Circuit Court, discussed Mason v. Ship Blaireau, and distinctly held that the freighter is entitled to salvage only "when he does some act which discharges the owner from his responsibility"; and so Mr. Justice Story held in The Nathaniel Hooper, Fed. Cas. No. 10,031, after an elaborate consideration of principles and the authorities.

Judge Choate in The Colon, Fed. Cas. No. 3,024, allowed to the owners of the cargo who had intervened in a suit for salvage the damages which they had sustained by reason of the deviation of the vessel. He referred to the cases holding that cargo of the salving ship is not entitled to share in the salvage, and said that these cases—

"do not deny, but recognize, the right of the salving ship, being liable over to the shipper, to recover the resulting damage to cargo as one element of the salvage award, unless the ship has been released from this liability to the shipper; and, if the shipper has so released the ship, they also recognize the right of the shipper to recover what the ship would otherwise have recovered on that account."

This decision was approved in a dictum by Judge Addison Brown in The Wells City (D. C.) 57 Fed. at page 320, but was disapproved by Judge Benedict in The Persian Monarch (D. C.) 23 Fed. 820, and The Hekla (D. C.) 62 Fed. 941, by Judge Hughes in The Brixham (D. C.) 54 Fed. 539, and by the Circuit Court of Appeals for the Fifth Circuit in Compagnie, etc., v. Charente S. S. Co., 60 Fed. 921, 9 C. C. A. 292. The decision of Judge Choate stands alone in allowing a cargo owner, who has taken a bill of lading like the one in this case, to participate in a salvage award, or to claim damages by reason of the deviation of the ship during the salvage service.

In spite of his eminent authority, fortified by the dictum of Judge Brown, I cannot follow the reasoning in The Colon. The very fact that the ship, by virtue of the terms of the bill of lading in that case, was under no liability for deviation caused by a proper salvage service, in my opinion, logically precludes the recovery of any damages or any portion of a salvage award by the cargo owner. As I have already pointed out, the salving vessel and her master can secure no award by reason of any damage to the cargo, unless it be one for which they could be held responsible by the freighter. Any loss caused by the engagement of the ship in salvage service is one of the risks which the freighter assumes under the provisions of the bill of lading and by virtue of the terms of the Harter Act when he ships his cargo. He may secure a corresponding benefit if salvage service is performed by some other vessel in a way which benefits his cargo to the detriment of the cargo upon that vessel. The freighter, to use the old admiralty phrase, must be regarded as "sub mutuæ vicissitudinis obtentu." The only way he can protect himself from loss is by insurance.

The perplexity of the cases arises in my opinion from a misunderstanding of the effect of the decision in Mason v. Blaireau. In The Blaireau there was no discussion of the ground upon which the cargo owner was given a right to recover. That decision by the Supreme Court was explained in the subsequent cases of Bond v. The Cora, supra, and The Nathaniel Hooper, supra. The kind of consent given by the freighter to the performance of the salvage service by the vessel justified the recovery. It amounted, I think, in effect to a subrogation of the freighter to the claim that the ship would have had before the Harter Act to recover by way of salvage the damage to the cargo caused by the deviation. A bill of lading exonerating a ship from damage due to prolongation of the voyage and permitting the assistance of vessels in distress and deviation, and the provision of section 3 of the Harter Act, which I have quoted, do not, in my opinion, permit any such right of subrogation. The freighter, therefore, having no right against the ship through which he may work out his claim, must fail.

The exceptions to the libel should be sustained, and the libel is dismissed.